# EXHIBIT A

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM    INDEX NO. 206051/2025
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 02/25/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-----------------------------------------------------------------X

TOWN OF BROOKHAVEN,

                           Plaintiff,

      -against-

BERKLEY INSURANCE COMPANY, a/k/a or
d/b/a BERKLEY PUBLIC ENTITY MANAGERS,

                          Defendant.

-----------------------------------------------------------------X

Index No.: 2025-

**SUMMONS**

Plaintiff designates Suffolk
County as the place of trial
The basis of venue is CPLR 503

**TO THE ABOVE NAMED DEFENDANT(S):**

      YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a

copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of

Appearance on the plaintiff's attorneys within twenty (20) days after the service of this

Summons, exclusive of the day of service, or within thirty (30) days after service is complete if

this Summons is not personally delivered to you within the State of New York; and in case of

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the Complaint.

Dated: Garden City, New York
       February 25, 2025

                            **ROSENBERG CALICA BIRNEY
                            LIEBMAN & ROSS LLP**
                            *Attorneys for Plaintiff, Town of Brookhaven*

                          By: _____
                                Robert M. Calica
                           100 Garden City Plaza, Suite 408
                           Garden City, New York 11530
                           (516) 747-7400

TO:    Berkley Insurance Company
        a/k/a – d/b/a Berkley Public Entity Managers
        412 Kemble Avenue
        Suite 310N
        Morristown, New Jersey  07960

{00502108-2}

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X
TOWN OF BROOKHAVEN,

                            Plaintiff,

     -against-

BERKLEY INSURANCE COMPANY, a/k/a or
d/b/a BERKLEY PUBLIC ENTITY MANAGERS,

                         Defendant.
-----------------------------------------------------------------X

Index No.:

**COMPLAINT**

Plaintiff, TOWN OF BROOKHAVEN, by its attorneys, **Rosenberg Calica Birney Liebman & Ross LLP**, (as Special Counsel to Brookhaven Town Attorney Annette Eaderesto, Esq.), for its Complaint herein alleges as follows:

### Introduction

1.     This action is brought by plaintiff, TOWN OF BROOKHAVEN ("Town" or "Brookhaven"), a New York municipal corporation against defendant BERKLEY INSURANCE COMPANY ("Berkley Insurance"), a/k/a or d/b/a BERKLEY PUBLIC ENTITY MANAGERS, which issued five (or more) applicable insurance policies to the Town covering the periods January 1, 2014 through and including January 1, 2019 (the "Berkley Policies") for, inter alia, declaratory relief, specific enforcement of the Berkley Policies, and reimbursement of the covered environmental contamination losses and damages at issue.

2.     The Town seeks to require Berkley Insurance to defend, indemnify and reimburse the Town of Brookhaven with reference to any and all claims, damages and losses arising from the contamination of Brookhaven Calabro Airport, a Town-owned 600 acre general aviation airport located in Shirley, County of Suffolk, New York ("Calabro Airport") which is currently subject to environmental investigation and remediation.

{00501735-13}

3.      Calabro Airport has become contaminated by substances known as "Aqueous Film-Forming Foam" ("AFFF"), a product widely utilized for many decades to control and extinguish aviation and other flammable liquid fires, particularly at airports such as the Town-owned Calabro Airport ("AFFF Products").

4.      AFFF Products contain two toxic chemical ingredients known as "PFOA" and "PFOS" (collectively, "PFAS") which have been ascertained to leach into the soil and groundwater, resulting in contamination known to have significant adverse health effects on persons, and which are exceedingly difficult and costly to remediate.

5.      In 2016, the United States Environmental Protection Agency ("EPA") issued a Health Advisory Level ("HAL") of 70 parts per trillion for combined PFOA and PFOS, in July 2020, the New York State Department of Environmental Conservation ("DEC") established a Maximum Contamination Level ("MCL") for PFOA and PFOS of 10 parts per trillion each ("PPT"), and in January 2021, the DEC incorporated these MCL's in its regulatory Guidance for MCL levels for Remedial Programs.

6.      A DEC investigation of Calabro Airport (and other surrounding properties) conducted in June and July 2019 reported that PFOA and PFOS contamination in the groundwater beneath Calabro Airport exceeded both the stricter DEC MCL's later adopted on July 30, 2020 and even exceeded the more lenient EPA's 2016 Health Advisory Levels.

7.      As a result of the DEC investigation: (a) the DEC designated the Calabro Airport site as a "potential" Inactive Hazardous Waste disposal site pursuant to New York Environmental Conservation Law Article 27 (ECL §27-1301); (b) the DEC demanded that the Town initially undertake an investigation of the PFOA and PFOS contamination levels in the soil and groundwater of Calabro Airport and to undertake various investigation on measures; and (c) the

{00501735-13}                                   2

Town entered into with the DEC a limited Order on Consent and Administrative Settlement dated June 18, 2020 (the "Consent Order").

8.      The Consent Order, without admission or acknowledgment of liability on the part of the Town, requires it to undertake an investigation sufficient for the Town to prepare a Site Characterization Work Plan and Site Characterization Report to the DEC, for which the Town has now been required to engage an environmental engineering consultant, PW Grosser Consulting ("PWGC"), whose additional work is now progressing.

9.      The Consent Order otherwise fully reserved the Town's rights as to liability and other obligations and did not commit the Town to offering or agreeing to pay any amount in excess of a limited reimbursement of prior expenses to the DEC of approximately $38,000.

10.     As detailed below, the Berkley Policies require Berkley Insurance, without limitation, to defend and indemnify the Town with reference to and to reimburse all costs and expenses associated with both claims or potential claims against the Town stemming from contamination of Calabro Airport, its soil and groundwater, the costs of remediation imposed or which may be imposed by the DEC or otherwise required, any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products, and warrant the other relief sought below.

11.     As further shown below, no Exclusion or limitation contained in the Berkley Policies in any manner limits, bars or precludes the Town's right to defense, indemnification, remediation costs, and any other loss and liability which may arise as a result of the contamination of Calabro Airport and its surrounding properties.

### Prior Town Use of AFFF at Calabro Airport

12.     A total of five accidents or incidents have been recorded with the National Transportation Safety Bureau that are connected to Calabro Airport and have resulted in fire on

{00501735-13}                              3

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

the ground on the following dates: May 6, 1984; August 3, 1988; November 18, 1998; August 19, 2012 and February 12, 2016.

13. Upon information and belief, AFFF Products were utilized in connection with the five accidents or incidents resulting in a fire on the ground enumerated above.

14. In addition, AFFF foam has previously been stored in the Terminal Building of the Calabro Airport for firefighting use in small amounts, but not since 2006.

15. By reason of the foregoing, the Town: (a) has and will continue to sustain environmental harm and property damage to Calabro Airport, its soils and groundwater from AFFF contamination; (b) may incur substantial expenditures in remediating PFOA and PFOS contamination caused by the use and dispersal of AFFF Products; (c) and may become exposed to liability in future actions and lawsuits by owners of other properties and others against the Town for which the Town is and will be entitled to damages, indemnification, reimbursement, declaratory, or other relief from Berkley Insurance.

**Parties**

**A. The Town and Calabro Airport**

16. Plaintiff, Town of Brookhaven ("Town"), is a municipal corporation organized under the laws of the State of New York with its principal place of business located at 1 Independence Hill, Farmingville, New York.

17. Calabro Airport was constructed during World War II, was thereafter owned by New York State, and was acquired, owned and has been operated by the Town since 1961, conducting approximately 130,000 aircraft operations annually (over 350 per day), with over 200 aircraft based at the airport, three fixed-based operators ("FBOs") and multiple other tenants.

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM    INDEX NO. 603051/2025
NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 02/25/2025

## B. Berkley Insurance and the Berkley Policies

18.     Upon information and belief, Berkley Insurance is an insurance company or entity duly licensed to issue policies of insurance in the State of New York and in accordance with the laws of the State of New York and issued the following policies to the Town of Brookhaven:

| Policy Number | Policy Period | General Liability Coverage Part Limits of Insurance |
|---|---|---|
| PEM 0000039-00 | January 1, 2014 to January 1, 2015 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-01 | January 1, 2015 to January 1, 2016 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-02 | January 1, 2016 to January 1, 2017 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-03 | January 1, 2017 to January 1, 2018 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-04 | January 1, 2018 to January 1, 2019 | Each Occurrence $10,000,000/Aggregate $10,000,000 |

19.     The Town gave due and proper notice to Berkley Insurance in accordance with the requirements of the Berkley Policies of the Town's claims and requests for coverage, defense, indemnification and reimbursement of any and all losses and remediation requirements resulting from the contamination of Calabro Airport by AFFF Products including the Town's giving due and proper disclosure that the Town had executed a Consent Order with the DEC requiring, *inter alia*, that the Town reimburse the DEC for the sum of $38,214 in past DEC site investigation costs and requiring the Town to submit a Site Characterization Work Plan and perform other steps to investigate contamination at Calabro Airport.

{00501735-13}                              5

20. At the present time, it is anticipated that the DEC may (and may even be likely) to declare Calabro Airport as an Inactive Hazardous Waste site in accordance with the New York Environmental Conservation Law (the "Insured Claims"), which Insured Claims Berkley Insurance has wrongfully rejected by its disclaimer letters dated September 22, 2021 (Ex. 1) and December 10, 2024 (Ex. 2).

**The Basis for Berkley Insurance Disclaimer of the Town's Insurance Coverage Claims**

21. As set forth in its disclaimer letter dated September 22, 2021 (the "Disclaimer Letter"), Berkley Insurance disclaims coverage in purported reliance upon certain insurance policy "exclusions" and "limitations" enumerated in the Disclaimer Letter (Ex. 1).

22. The Disclaimer Letter is stated to be based upon the following purportedly applicable "exclusions" or "limitations" in the Berkley Policies (all disputed by the Town):

a. Exclusions of damages for any costs, civil fines, penalties or expenses levied or imposed against an Insured arising from any complaint or enforcement from any Federal, State or local governmental agency;

b. Exclusions applicable to "actual alleged or threatened discharge, dispersal, seepage, migration or release or escape of pollutants" or requirements to "monitor, clean up, remove, contain, treat, detoxify or neutralize" such pollutants or claims by any governmental authority or others for damages because of "testing for, monitoring, cleaning up" or otherwise remediating pollutants; and

c. Exclusions for "property damage" to "Property owned, occupied or leased by an Insured" (i.e., a so-called "Owned Property" exclusion).

23. Pursuant to the letter of the Town's Special Counsel, Rosenberg Calica Birney Liebman & Ross LLP dated September 26, 2024 (Ex. 3 hereto), the Town duly and timely

requested that Berkley Insurance reconsider its September 22, 2021 Disclaimer Letter upon the

following grounds:

- The Town is entitled to coverage under the Policy's General Liability Coverage Part, for **property damage**;

- Contrary to Berkley's contention, the pollutants exclusion (contained in paragraph C(12) of the Policy's Common Conditions, Definitions and Exclusions) does not apply, because the damages were proximately and foreseeably caused from heat, smoke or fumes from a **hostile fire**, which is an express exception in the Policy to the pollutants exclusion. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017); Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685 F.Supp.3d 187, 208 (S.D.N.Y. 2023); Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011);

- Berkley also wrongly relied on the so-called "owned-property" exclusion to covered property damage (contained in paragraph D(7) of the General Liability Coverage Part). That exclusion provides that property owned by the Insured is not covered as property damage. As a matter of settled law and public policy, the owned-property exclusion does not apply because at issue is environmental contamination migrating or potentially migrating toward adjoining lands of third-parties and to the aquifer waters of the Long Island Sole Source Aquifer, neither of which are owned by the Insured. Olin Corporation v. Lamorak Insurance Company, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018); Kirchner v. Fireman's Fund Ins. Co., 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); and

- Berkley's claim that by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town violated condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain our prior written approval before offering or agreeing to pay any amount in excess of the retained limit," is directly refuted by the express text of that Consent Order, which specifically fully preserved the Town's rights to challenge any DEC remedial orders and allowed and allows the Town to elect to "terminate" that Consent Order (the "Objection Letter").

24.    The Town's detailed elaboration of the basis for the Town's demand for the

reconsideration of the Berkley Insurance Disclaimer as set forth in the Objection Letter (Ex. 3) is

fully and completely incorporated herein, including: (a) its full discussion of applicable New York

law and Federal Court authorities applying New York law or applicable to this dispute; (b) the

Berkley Policies' exception from "exclusion" of property damage "caused by heat, smoke or

fumes" from "hostile fires;" (c) the inapplicability of the "Owned-Property" exclusion; (d) that the Site Characterization Consent Order did not offer or agree to pay amounts in excess of the retained limits, and (e) for other reasons more fully detailed in the Town's Objection Letter and/or applicable by law or agreement.

25.     Notwithstanding the Town's Objection Letter, Berkley Insurance wrongfully, unlawfully, without legal cause or justification, and in violation of the terms of the Berkley Policies, adhered to its disclaimer by its letter dated December 10, 2024 (Ex. 2 hereto).

26.     By reason thereof, the Town is entitled to the relief detailed below including, without limitation:

   a.     A declaration that its claims against Berkley Insurance for defense, indemnification and recovery of any and all losses incurred in connection with the pollution of Calabro Airport by AFFF Products, its remediation, or any claims by owners or occupants of "Other Properties" or by others is required under the Berkley Policies;

   b.     Specifically enforcing the Berkley Policies by requiring Berkley Insurance, at its sole cost and expense, to defend, indemnify and reimburse the Town from any and all loss or liability arising out of the pollution of Calabro Airport by AFFF Products against any claims against the Town arising therefrom; and

   c.     Granting the Town such other and further relief as may be appropriate.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Declaratory Judgment)

27.     Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

28.     An actual and justiciable controversy exists between the Town of Brookhaven and Berkley Insurance concerning whether Berkley Insurance wrongly disclaimed coverage.

29.     Plaintiff has no adequate remedy at law.

{00501735-13}                                   8

30. By reason of the foregoing, the Town of Brookhaven is entitled to a Declaratory judgment declaring as follows:

     a. Declaring that Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety, and any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

     b. Declaring that no exclusion, limitation or other provision of the Berkley Policies in any manner limits, bars, or precludes the Town's right to defense, indemnification, reimbursement of remediation costs, and any other loss, liability or other damage which the Town may sustain by reason of the contamination of Calabro Airport, its soil and groundwater and its surrounding properties by AFFF Products;

     c. Declaring that the Town is entitled to the same complete defense, indemnification and reimbursement of remediation and other costs or damages for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by other owners of Other Properties or others in any manner arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM   INDEX NO. 605091/2025
NYSCEF DOC. NO. 2                                            RECEIVED NYSCEF: 02/25/2025

d.      Declaring such other matters, disputes and controversies between the Town of Brookhaven and Berkley Insurance as may be necessary and appropriate to fully resolve any and all disputes and controversies between the parties.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Specific Enforcement)

31.     Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

32.     By reason of the foregoing, the Town is entitled to and hereby demands specific enforcement of the Berkley Policies by requiring that defendant Berkley Insurance do the following:

a.      Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety and, any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

b.      Requiring Berkley Insurance to provide the Town with a full defense, indemnification and reimbursement of remediation and other costs for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by owners of Other Properties or others in any manner

{00501735-13}                           10

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

      c.     Requiring Berkley Insurance to perform such further actions as may be necessary and appropriate to fully resolve any and all Town claims and disputes and controversies between the parties.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Monetary Damages)**

33.    Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

34.    By reason of the repudiation and breach of the obligations of defendant Berkley Insurance under the Berkley Policies, the Town of Brookhaven has sustained monetary damages in an amount exceeding all jurisdictional requirements of this Court and increasing steadily as the Town is engaged in the investigation and ongoing partial remediation of contamination of Calabro Airport resulting from the use and dispersal of AFFF Products in an amount to be determined at trial.

**WHEREFORE**, plaintiff, Town of Brookhaven, demands judgment against defendant, Berkley Insurance as follows:

1.    Upon the First Cause of Action Declaring as follows:

      a.     Declaring that Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety, and any potential claims against the Town

{00501735-13}               11

by owners of adjacent or other nearby properties (the "Other Properties") arising from the

contamination of Calabro Airport by AFFF Products;

     b.     Declaring that no exclusion, limitation or other provision of the Berkley

Policies in any manner limits, bars, or precludes the Town's right to defense,

indemnification, reimbursement of remediation costs, and any other loss, liability or other

damage which the Town may sustain by reason of the contamination of Calabro Airport,

its soil and groundwater and its surrounding properties by AFFF Products;

     c.     Declaring that the Town is entitled to the same complete defense,

indemnification and reimbursement of remediation and other costs or damages for which

the Town may become exposed to liability in future actions, lawsuits, proceedings or

claims by other owners of Other Properties or others in any manner arising out of

contamination of Calabro Airport, its soils and groundwater from AFFF Products and the

cost of remediating such contamination; and

     d.     Declaring such other matters, disputes and controversies between the

Town of Brookhaven and Berkley Insurance as may be necessary and appropriate to fully

resolve any and all disputes and controversies between the parties;

2.     Upon the Second Cause of Action, granting the Town specific performance of the

Berkley Policies by requiring Berkley Insurance to do the following:

     a.     Requiring Berkley Insurance under the Berkley Policies to defend,

indemnify and reimburse the Town of Brookhaven with reference to all damages, losses,

costs and expenses associated with both claims or potential claims against the Town

stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF

Products, the costs of remediation imposed or which may be imposed by the DEC or

otherwise required by law or public safety and, any potential claims against the Town by

owners of adjacent or other nearby properties (the "Other Properties") arising from the

contamination of Calabro Airport by AFFF Products;

      b.     Requiring Berkley Insurance to provide the Town with a full defense,

indemnification and reimbursement of remediation and other costs for which the Town

may become exposed to liability in future actions, lawsuits, proceedings or claims by

owners of Other Properties or others in any manner arising out of contamination of

Calabro Airport, its soils and groundwater from AFFF Products and the cost of

remediating such contamination; and

      c.     Requiring Berkley Insurance to perform such further actions as may be

necessary and appropriate to fully resolve any and all Town entitlements, claims and

disputes and controversies between the parties;

      3.     Upon the Third Cause of Action, granting the Town of Brookhaven monetary

damages against Berkley Insurance for repudiation and breach of the Berkley Policies granting

damages in an amount to be determined at trial; and

      4.     Granting plaintiff Town of Brookhaven such other and further relief as the Court

may deem appropriate, together with interest, as applicable, from the earliest ascertainable date,

and the costs and disbursements hereof.

Dated: Garden City, New York
       February 25, 2025            Yours, etc.

                   **ROSENBERG CALICA BIRNEY
LIEBMAN & ROSS LLP**
                   *Attorneys for Plaintiff Town of Brookhaven*

                   By: _____
                       Robert M. Calica
                       Judah Serfaty
                   100 Garden City Plaza, Suite 408
                   Garden City, New York  11530
                   (516) 747-7400

{00501735-13}          13

Case 2:25-cv-02210-JMA-LGD   Document 1-1   Filed 04/25/25   Page 16 of 76 PageID #: 19

TO:    Berkley Insurance Company
        a/k/a – d/b/a Berkley Public Entity Managers
        412 Kemble Avenue
        Suite 310N
        Morristown, New Jersey  07960

Case 2:25-cv-02310-JMA-LGD    Document 1-1    Filed 04/25/25    Page 17 of 76 PageID
#: 26

# VERIFICATION

STATE OF NEW YORK      )
                                 ) ss:
COUNTY OF SUFFOLK      )

         ANNETTE EADERESTO, being duly sworn deposes and says:

         I am the Town Attorney of the Town of Brookhaven, and a Public Officer.

         I have read the foregoing Complaint, and the same is true of own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

                                             _____
                                                 ANNETTE EADERESTO

Sworn to before me this
26th day of February, 2025.

_____
Notary Public

MICHELE A DANCONA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DA6042652
Qualified in Suffolk County
Commission Expires May 30, 2026

{00502227-1}

1 of 1

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM INDEX NO. 605051/2025
NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 02/25/2025

Exhibit 1

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM    INDEX NO. 605091/2025
NYSCEF DOC. NO. 3                                   RECEIVED NYSCEF: 02/25/2025



Jeffrey Roberts
Claims Director
412 Mt. Kemble Avenue, Suite G50
Morristown NJ 07960
212-835-1814
Email: jeroberts@wrberkley.com

September 22, 2021

**Via Email Only**
jlutzer@brookhavenny.gov

Jennifer Lutzer
Town of Brookhaven
1 Independence Hill
Farmingville, New York 11738

Re:   ***In The Matter Remedial Program For Brookhaven Calabro Airport***
      Index No.:      CO 1-20200210-82
      Berkley Insured:    Town of Brookhaven
      Berkley Claim No.:   2105409

Dear Ms. Lutzer:

This provides Berkley Insurance Company's ("Berkley") updated coverage position based upon its ongoing investigation.  This follows our April 28, 2021 letter that is incorporated by reference herein.

Berkley issued to the Town of Brookhaven ("Brookhaven") the following policies (collectively the "Berkley policies"):

| Policy Number | Policy Period | General Liability Coverage Part Limits of Insurance |
| --- | --- | --- |
| PEM 0000039-00 | January 1, 2014 to January 1, 2015 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-01 | January 1, 2015 to January 1, 2016 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-02 | January 1, 2016 to January 1, 2017 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-03 | January 1, 2017 to January 1, 2018 | Each Occurrence $10,000,000/Aggregate $10,000,000 |

| PEM 0000039-04 | January 1, 2018 to January 1, 2019 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
|---|---|---|

For the reasons discussed below, Berkley disclaims coverage to Brookhaven and will not defend or indemnify Brookhaven in the above referenced matter.

## BACKGROUND

The New York Department of Environmental Conservation (the "NYDEC") initiated the matter In The Matter Remedial Program for DEC Site Brookhaven Calabro Airport DEC Site No. 152263, Index No. CO 1-20200210-82, for the property located at 135 Dawn Drive, Shirley, New York 11967 (the "Site"). The NYDEC has designated the Calabro Airport location as a potential hazardous waste site and is conducting a "Site Characterization" to identify and quantify the presence of PFOS and PFOA contaminants found in the soil and groundwater. A November 26, 2019 letter from Environmental Assessment & Remediations ("EAR") indicates that investigation of the Site is being conducted pursuant to NYDEC Standby Contractor Authorization Form dated February 14, 2019 (Callout ID: 136708) and that, between June 24 and July 2, 2019, EAR installed temporary borings at fourteen (14) locations for the collection of groundwater samples. The samples collected contained levels of PFOA and PFOS that were outside of acceptable limits or exceeded USEPA advisory level limits.

We understand that Brookhaven owns the Calabro Airport Site. On May 21, 2020, Brookhaven executed a Consent Order with the NYDEC that obligates Brookhaven to reimburse the NYDEC $38,214 in past Site investigation costs and requires Brookhaven to submit a Site Characterization Work plan.

## THE BERKLEY POLICIES

Berkley refers you to the complete terms, conditions and exclusions of the Berkley policies. Berkley reserves the right to rely on any term(s), condition(s) and exclusion(s) of the Berkley policies and the failure to cite any particular term(s), condition(s) and exclusion(s) herein shall not be deemed a waiver thereof.

Please refer to the **"PUBLIC ENTITY RETAINED LIMITS POLICY COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS"** (form CCP1001 01/13) which provides:

    **A.   CONDITIONS**
        All Coverage Parts included in this **policy** are subject to the following conditions except as where expressly indicated.
                       \*   \*   \*
    9.   Defense and Settlement
        a)  **We** have no duty to defend a claim against an insured seeking damages.
        b)  **We** shall have no obligation to pay or indemnify an **insured** for any amount if an **insured's** obligation to pay **damages** and **claim expenses** is within or equal to the **retained limit.**

*a Berkley Company*

c) **You** have the duty to defend any **claim** to which this insurance applies and shall be responsible for the **damages** and **claim expenses** up to the **retained limit.**

d) **Your** legal obligation to pay **damages** must be evidenced either by a judgment against an **insured** after final adjudication, an arbitration award entered as a judgment, or by a written settlement executed by **you** and the settling claimants.

e) **You** must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**.

f) **We** shall have the right and **you** shall avail **us** of the opportunity to associate with **you** in the defense of any **claim** that in **our** sole opinion may create indemnification obligations for **us**.

g) **We** shall have the right to settle any **claim** that in **our** sole opinion may create indemnification obligations for **us** under this **policy**.

\* \* \*

**B. DEFINITIONS**

1. **Accident** includes continuous or repeated exposure to substantially the same general harmful conditions which results in **bodily injury** or **property damages**. All such exposure to substantially the same general conditions will be considered as arising out of one **accident**.

\* \* \*

3. **Advertising injury** means one or more of the following offenses committed or alleged to have been committed in any advertisement, publicity article, broadcast, or telecast and arising out of **your** advertising activities except if arising out of electronic chat rooms or bulletin boards:

   a. Libel, slander or defamation;
   b. Any infringement of copyright, title or slogan;
   c. Use of another's advertising idea in **your** advertisement;
   d. Oral or written publication of material that violates a person's right of privacy.

\* \* \*

6. **Bodily injury** means:

   a. Physical injury, sickness or disease sustained by any person, including death resulting from any of these at any time; and
   b. Mental anguish, mental injury mental tension, emotional distress, disability, pain and suffering, shock or fright if arising out of item 6.a.

7. **Claim** means:

   a. A written demand against any **insured** for monetary damages or non-monetary injunctive relief;
   b. A civil, administrative or regulatory proceeding against any **insured** commenced by:
      i. The service of a complaint or similar pleading against any **insured** seeking monetary damages or non-monetary or injunctive relief;

*a Berkley Company*

Case 2:25-cv-02310-JMA-LGD   Document 1-1   Filed 04/25/25   Page 22 of 76 PageID #: 25

ii.   The issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with any federal, state or local governmental authority located anywhere in the world; or

iii.  The service upon or other receipt by an **insured** of a written notice or subpoena from the investigating authority identifying any **insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced.

Notwithstanding the foregoing, however, any complaint filed with the Equal Employment Opportunity Commission ("EEOC") shall not constitute a **claim** unless the EEOC has issued a "right to sue" letter or notice to the claimant;

c.  A criminal proceeding against any **insured** commenced by a return of an indictment, information, or similar document, or receipt or filing of a notice of charges;

d.  An arbitration proceeding against any **insured** seeking monetary damages or non-monetary or injunctive relief;

e.  Solely with respect to Insuring Agreement A.2, a written request of the **insured** to toll or waive a statute of limitations applicable to a **claim** described in paragraphs a through d above; including any appeal therefrom.

**Claim** does not mean or include a labor union grievance or complaint filed with a labor union.

*   *   *

11. **Damages** means:

a.  Compensatory **damages** that the **insured** becomes legally obligated to pay on account of any **claim**;...

*   *   *

d.  **Damages** does not include:

i.    Any amount that the **insured** is not financially liable or legally obligated to pay;

ii.   Taxes, fines, penalties, or assessments;

iii.  Punitive or exemplary **damages**, or the multiple portion of any multiplied **damage** award;

iv.   Matters uninsurable under the laws pursuant to which this **policy** is construed;

v.    The cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief.

vi.   Employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation in a settlement or judgment for an **employment practice violation**;

*a Berkley Company*

vii. Any liability or costs incurred to modify any building or property to make it more accessible or accommodating to any person;

viii. Any liability of costs in connection with any educational, sensitivity or other corporate program, **policy** or seminar;

ix. The value of tuition or scholarship;

x. The reimbursement of tuition, books, transportation expenses and other fees associated with educational activities;

xi. Any amount that an **insured** shall be required to pay pursuant to a **special needs hearing** award, other than prevailing party fees

xii. The return of funds which were received:

    i. from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; or

    ii. as donations from a third party.

xiii. **Crisis management expense**; or

xiv. Liquidated **damages**, except to the extent specifically included as **damages** above.

*  *  *

17. **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

*  *  *

26. **Occurrence** means:

a. With respect to **bodily injury** and **property damage**, an **accident** including continuous or repeated exposure to substantially the same general harmful conditions which results in **bodily injury** or **property damage**. All such exposure to substantially the same general conditions will be considered as arising out of one **occurrence**;

b. With respect to **personal injury**, only those offenses specified in the **personal injury** definition. All **damages** arising out of substantially the same **personal injury** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **occurrence**.

c. With respect to **advertising injury**, only the offenses listed in the **advertising injury** definition. All **damages** arising out of substantially the same **advertising injury** regardless of frequency, repetition, the number or kind of media used, the number or kind of offenses, or the number of claimants, will be considered as arising out of one **occurrence**.

27. **Personal injury** means one or more of the following offenses:

a. False arrest, false imprisonment wrongful detention or malicious prosecution;

*a Berkley Company*

Case 2:25-cv-02310-JMA-LGD   Document 1-1   Filed 04/25/25   Page 24 of 76 PageID #: 27
INDEX NO. 605091/2025
RECEIVED NYSCEF: 02/25/2025

    b.    Libel, slander, defamation of character, or oral or written publication of material that violates a person's right of privacy; unless arising out of advertising activities in electronic chat rooms or bulletin boards;

    c.    Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of the owner, landlord or lessor, or by a person claiming to be acting on behalf of the owner, landlord or lessor.

    d.    **Personal injury** does not include the disclosure of any individual's name; address; telephone number; medical, healthcare or other health information; social security, driver's license or other government identification number; credit or debit card number; account numbers or histories; passwords or other personal information not lawfully available to the general public.

\*   \*   \*

31.    **Pollutant(s)** means

    a.    any substance exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent;

    b.    any solid, liquid, gaseous or thermal irritant, contaminant or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed; and also

    c.    any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, **fungi** or bacteria (not including to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption), lead or lead compounds or lead contained in any materials, and electric or magnetic or electromagnetic field radiation.

\*   \*   \*

31.    **Property damage** means physical injury to tangible property, including all resulting loss of use of such property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. For purposes of this insurance, electronic data is not tangible property. Electronic data means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks. CD-ROMS, DADs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

32.    **Retained limit** means the applicable dollar amounts shown in the Declarations, applicable Coverage Part or endorsement, which the **insured** bears as an uninsured amount at its own risk. The **retained limit** must be satisfied by actual payment by **you**. The **retained limit** cannot be satisfied by payment of any deductible of any other **policy** or any payments made on behalf of any **insured** by any other **insurer**, person or entity. **You** must pay

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM      INDEX NO. 605031/2025
NYSCEF DOC. NO. 3                                     RECEIVED NYSCEF: 02/25/2025

the **retained limit** under this **policy** without regard to whether any **insured** must pay other amounts under any other **policy**, even if the **claim** is deemed to have been caused by one **occurrence**, **accident** or **wrongful act.** The **retained limit** shall not be impaired by payments for any **claim**, or related **claim expenses**, brought against an **insured** which is not covered under the applicable Coverage Part.

\* \* \*

37. **Suit** means a civil proceeding in which **damages** because of **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **wrongful act** to which the applicable Coverage Part applies, are alleged, including:

   a. An arbitration proceeding in which such **damages** are alleged; or

   b. Any other Alternative Dispute Resolution proceeding in which such **damages** are alleged.

**C. Exclusions**

All Coverage Parts included in this **policy** also contain their own exclusions and are subject to any applicable exclusions in the Coverage Part and the following Exclusions that apply to all Coverage Parts except as otherwise expressly indicated:

The insurance under this Coverage Part does not apply to:

\* \* \*

5. Any **damages** for any costs, civil fines, penalties or expenses levied or imposed against an **insured** arising from any complaint or enforcement action from any federal, state, or local government regulatory agency.

\* \* \*

12. Any:

   a. Liability arising from the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

   b. Loss, cost or expense arising out of any:

      i. Request, demand or order than an **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

      ii. Any **claim** by or on behalf of a governmental authority or others for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

With respect to the General Liability Coverage Part, this exclusion does not apply to:

   a. **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**;

   b. **Bodily injury** if sustained within a building owned or occupied by, or rented or loaned to, any **insured** and caused by smoke, fumes, vapor, or soot from equipment used to heat that building.

With respect to the **Automobile** Liability Coverage Part, this exclusion does not apply to **accidents** that occur away from premises owned or

Case 2:25-cv-02310-JMA-LGD   Document 1-1   Filed 04/25/25   Page 26 of 76 PageID #: 29
INDEX NO. 1/2025
RECEIVED NYSCEF: 02/25/2025

rented to an **insured** with respect to **pollutants** not in or upon a **covered automobile**, but only if:

a. The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or **damaged** as a result of the maintenance or use of a **covered automobile**; and

b. The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or **damage**; and

c. The **pollutants** were not in, upon or released from the **covered automobile**.

Paragraph c. above does not apply to fuels, lubricants, fluids, exhaust, gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **covered automobile** or its parts, if:

i. The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **automobile** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

ii. The **bodily injury** or **property damage** does not arise out of the operation of **mobile equipment**.

\* \* \*

Please refer to the **"PUBLIC ENTITY RETAINED LIMITS POLICY GENERAL LIABILITY COVERAGE PART"** (form CCP1002 01/13) which provides:

In consideration of the payment of the premium and the undertaking of the **insured** to pay the **retained limit** as described herein, and subject to the Limits of Insurance of this insurance as set forth in the Declarations, and the exclusions, conditions, and other terms of this **policy**, the Company agrees with the **insured** as follows:

A. Insuring Agreement

The **insurer** will indemnify the **insured** for those sums the **insured** becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**. The **occurrence** must take place in the Coverage Territory.

No other obligation to pay any additional sums, perform acts or provide services is covered.

B. Retained Limit

The **insurer's** liability under this **policy** applies only to **damages** and **claim expenses** which are in excess of the **retained limit** applicable to this Coverage Part and specified in the Declarations. The **retained limit** must be borne by the **insured** as an uninsured amount and at its own risk. This will be true regardless of:

*a Berkley Company*

    1.   The number of persons and organizations who are **insureds** under this **policy**;

    2.   The number of **claims** made against any or all **insureds**; or

    3.   The number of persons or organizations making **claims**.

\*   \*   \*

D.    Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions in the Common Conditions, Definitions and Exclusions section of this **policy**.

The insurance under this Coverage Part does NOT apply to:

\*   \*   \*

7.   Any **property damage** to:
    a.   Property owned, occupied or leased by an **insured** or purchased by an **insured** under an installment sales contract or property on consignment to an **insured**;

## COVERAGE POSITION

As per the policy's General Liability Coverage Part, Berkley will indemnify Brookhaven for those sums it becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**.

The **claim** by the NYDEC does not seek **damages** for **bodily injury**, **personal injury** or **advertising injury** as those terms are defined in the Berkley policies.

To the extent the **claim** seeks damages for **property damage** to property owned, occupied or leased by an **insured** or purchased by an **insured** under an installment sales contract or property on consignment to an **insured**, coverage is excluded pursuant to exclusion "7" in the General Liability Coverage Part.

Berkley also denies coverage to the extent that the NYDEC requires Brookhaven to pay any taxes, fines, penalties, or assessments, as such items are not covered **damages** as that term is defined in the Berkley policies. In addition, Berkley also denies coverage for any costs incurred by Brookhaven to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief, as such items are also not covered **damages.**

The **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS** in the Berkley policies contains a pollution exclusion applicable to all coverage parts which provides that the policies do not apply to any:

    a.   Liability arising from the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or
    b.   Loss, cost or expense arising out of any:

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 3

Case 2:25-cv-02310-JMA-LGD    Document 1-1    Filed 04/25/25    Page 28 of 76 PageID
#: 31

INDEX NO. 603901/2025

RECEIVED NYSCEF: 02/25/2025

     i.   Request, demand or order than an **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

    ii.   Any **claim** by or on behalf of a governmental authority or others for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

The NYDEC has identified, and is continuing to investigate, PFOA and PFOS contamination at the Site. The NYDEC Site Record lists PFOA and PFOS as the "Contaminants of Concern" and indicates that they have been detected "above the EPA Health Advisory Level of 70 ng/l." PFOA and PFOS are **pollutants** as that term is defined in the Berkley policies.

NYDEC's claim is that Brookhaven is liable for the discharge, dispersal, seepage, migration, release or escape of the pollutants PFOA and PFOS at the Site. Coverage for the **claim** is excluded section "a." of the pollution exclusion in the Berkley policies.

Brookhaven's Consent Order with the NYDEC obligates Brookhaven to reimburse the NYDEC $38,214 in past Site investigation costs and requires Brookhaven to submit a Site Characterization Work plan to the NYDEC for PFOA and PFOS. Under section "b." of the pollution exclusion, the Berkley policies do not apply to costs incurred to investigate and remediate pollutants PFOA and PFOS at the Site.

Accordingly, coverage for NYDEC's **claim** against Brookhaven is completely excluded from coverage by the pollution exclusion in the Berkley policies. Berkley denies coverage to Brookhaven for NYDEC's **claim**.

Pursuant to exclusion "5" in the **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS** in the Berkley policies, Berkley also denies coverage for any **damages** for any costs, civil fines, penalties or expenses levied or imposed against Brookhaven arising from any complaint or enforcement action from any federal, state, or local government regulatory agency, including but not limited to NYDEC.

Pursuant to condition "9 e)" in the **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS**, Brookhaven "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**." Brookhaven executed the Consent Order with the NYDEC prior to notifying Berkley of this claim. Accordingly, Brookhaven's obligations under the Consent Order in excess of the retained limit are excluded from coverage. In addition, **retained limit** shall not be impaired by payments for any **claim**, or related **claim expenses**, brought against an **insured** which is not covered under the applicable Coverage Part. As the **claim** by NYDEC is not covered under the Berkley policies, any payments made by Brookhaven do not erode the **retained limit**. Pursuant to condition "9 a)" Berkley has no duty to defend a claim against an insured seeking damages.

No other coverage parts of the Berkley policies apply to this matter.

*a Berkley Company*

For the reasons discussed above, Berkley completely denies coverage to Brookhaven. Berkley will not defend or indemnify Brookhaven or any other party to this claim. If you have other insurance policies that may respond to this claim, you should notify that carrier immediately.

Berkley's coverage position is based upon the information available to us. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions or any other provisions of the Berkley policies. Berkley expressly reserves its right to supplement the foregoing if additional information is developed or disclosed and to assert policy positions and defenses not discussed herein which may be determined to be applicable. No waiver of the right to assert additional positions or defenses is intended and such a waiver is denied.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: 25 Beaver Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Boulevard, Mineola, NY 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202.

Please do not hesitate to call me if you have any questions regarding this letter or if you have any additional information you wish Berkley to consider.

Sincerely,

*Jeffrey Roberts*

Jeffrey Roberts
Claims Director

Cc:
Brian Jankauskas, P.E.
New York Department of Environmental Conservation
Division of Environmental Remediation
625 Broadway, 12th Floor
Albany, New York 12233-7013

Felix Wienclaw (via email to fwienclaw@brookhavenny.gov)

Stephen J. Jones (via email to Stephen.JonesJr@willistowerswatson.com)
Willis Towers Watson (via email to IN_WNA_Claims@willistowerswatson.com)

*a Berkley Company*

Exhibit 2

**Berkley**
Public Entity Managers
*A Berkley Company*

412 Mt. Kemble Ave.
Suite 310N
Morristown, NJ 07960

December 10, 2024

*Via Email: Rcalica@rosenbergllp.com*

Robert M. Calica, Esq.
Partner
Rosenberg Calica Birney Liebman & Ross LLP
100 Garden City Plaza, Suite 408
Garden City, NY 11530

| | |
|---|---|
| Re: | *In the Matter Remedial Program for Brookhaven Calabro Airport* |
| Index No.: | CO 1-20200210-82 |
| Berkley Insured: | Town of Brookhaven |
| Claim No.: | 000013971340 |
| BPE Claim No.: | 2105409 |

Dear Mr. Calica:

I write on behalf of Berkley Insurance Company ("Berkley") in response to your letter of September 26, 2024, which you submitted on behalf of the Town of Brookhaven ("Brookhaven").

As you know, on September 22, 2021, Berkley disclaimed coverage for Brookhaven's claim in connection with the matter *In The Matter Remedial Program for DEC Site Brookhaven Calabro Airport DEC Site No. 152263*, Index No. CO 1-20200210-82 initiated by the New York Department of Environmental Conservation ("NYDEC.").

In your letter, you asserted Berkley's bases for denying coverage were contrary to the subject policies and governing law and you demanded coverage on behalf of Brookhaven. Berkley has reviewed the arguments and issues that you raised and has determined that Berkley's coverage position remains unchanged. Based on the terms and conditions of the Berkley policies and New York law, Berkley must reiterate its position to disclaim coverage for Brookhaven's claim.

This letter is written under a reservation of rights, with none waived.

Sincerely,

*Matt Passanisi*

Matt Passanisi, Esq.
Claims Director
Berkley Public Entity

Exhibit 3

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM    INDEX NO. 605091/2025
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 02/25/2025



**ROSENBERG CALICA
BIRNEY LIEBMAN & ROSS LLP**

100 Garden City Plaza, Suite 408, Garden City, New York 11530    TELEPHONE 516-747-7400

**Robert M. Calica**    DIRECT DIAL: (516) 747-7400 (Ext. 310)
Partner    Fax:    (516) 747-7480
EMAIL ADDRESS:   Rcalica@RosenbergLLP.com

September 26, 2024

**VIA FEDERAL EXPRESS AND EMAIL**
Jeffrey Roberts
Claims Director
Berkley Insurance Company
412 Mt. Kemble Avenue, Suite G50
Morristown NJ 07960
212-835-1814
Email: jeroberts@wrberkley.com

  Re: In The Matter Remedial Program For Brookhaven Calabro Airport
  Index No.: CO 1-20200210-82
  Berkley Insured: Town of Brookhaven
  Berkley Claim No.: 2105409

Dear Mr. Roberts:

  We are attorneys for the Insured, Town of Brookhaven. For the reasons stated below, the Town disputes Berkley Insurance Company's denial of coverage in this matter as indicated in your correspondence of September 22, 2021. Each of Berkley's asserted bases for denying coverage are contrary to the subject Policy and governing law.

  As used in this letter, Town or Insured means the Town of Brookhaven, Berkley or Insurer means Berkley Insurance Company, and boldface terms are as defined in the Policy.

  As shown below:

- The Town is entitled to coverage under the Policy's General Liability Coverage Part, for **property damage**;

- Contrary to Berkley's contention, the **pollutants** exclusion (contained in paragraph C(12) of the Policy's Common Conditions, Definitions and Exclusions) does not apply, because the damages were proximately and foreseeably caused from heat, smoke or fumes from a **hostile fire**, which is an express exception in the Policy to the **pollutants** exclusion. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017); Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685

Case 2:25-cv-02310-JMA-LGD    Document 1-1    Filed 04/25/25    Page 34 of 76 PageID #: 37
INDEX NO. 605091/2025
RECEIVED NYSCEF: 02/25/2025



September 26, 2024
Page 2

F.Supp.3d 187, 208 (S.D.N.Y. 2023); <u>Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.</u>, 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011);

- Berkley also wrongly relied on the so-called "owned-property" exclusion to covered **property damage** (contained in paragraph D(7) of the General Liability Coverage Part). That exclusion provides that property owned by the Insured is not covered as **property damage**. As a matter of settled law and public policy, the owned-property exclusion does not apply because at issue is environmental contamination migrating or potentially migrating toward <u>adjoining</u> lands of third-parties and to the <u>aquifer waters</u> of the Long Island Sole Source Aquifer, neither of which are owned by the Insured. <u>Olin Corporation v. Lamorak Insurance Company</u>, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018); <u>Kirchner v. Fireman's Fund Ins. Co.</u>, 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); and

- Berkley's claim that by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town violated condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**," is directly refuted by the express text of that Consent Order, which specifically fully preserved the Town's rights to challenge any DEC remedial orders and allowed and allows the Town to elect to "terminate" that Consent Order.

## I.    <u>Coverage</u>

Under the Policy's General Liability Coverage Part, in pertinent part, Berkley is obligated to indemnify the Town for those sums it becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**.

Investigations have uncovered that the **property damage** to Calabro Airport was in large part the result of multiple fires from airplane crashes, resulting in heat, smoke and fumes that were foreseeably treated with Aqueous Film-Forming Foam (AFFF), also known as firefighting foam. Five accidents or incidents have been recorded with the National Transportation Safety Bureau that are connected to the airport and have resulted in heat, smoke or fumes from a **hostile fire** on the ground on the following dates: May 6, 1984; August 3, 1988; November 18, 1998; August 19, 2012 and February 12, 2016. Upon information and belief, AFFF products were utilized in connection with those five accidents or incidents and which leached into the ground and travelled.

The **damages** and date of **occurrence** are within the coverage periods. New York courts apply the broad "injury-in-fact" trigger for an **occurrence** under insurance policies. <u>Carrier Corporation v. Allstate Insurance Company</u>, 187 A.D.3d 1616 (4th Dep't 2020); <u>Continental Cas. Co. v. Rapid-American Corp.</u>, 177 A.D.2d 61 (1st Dep't 1992), <u>order aff'd</u>, 80 N.Y.2d 640 (1993). As it pertains to environmental injury to property, this broad standard is not at all limited to first exposure of the lands to the contaminants. Instead, policy **occurrence** triggering dates extend throughout the periods that the contamination injures the land and/or underlying waters.

RCB
L&R

September 26, 2024
Page 3

Cortland Pump & Equip., Inc. v. Firemen's Ins. Co. of Newark, N.J., 194 A.D.2d 117, 121 (3d Dept. 1993).

## II.   The Policy's "hostile fire" exception to the pollutants exclusion

The **pollutants** exclusion contained in paragraph C(12) the Policy's Common Conditions, Definitions and Exclusions, while providing an express exclusion for governmentally directed cleanups of environmental contaminants, contains a specific exception to that exemption concerning **property damage** caused from heat, smoke or fumes from a **hostile fire**. It therefore does not exempt coverage for such governmentally directed cleanups falling within that **hostile fire** exception. It provides:

[Exclusions:] 12. Any:

a. Liability arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

b. Loss, cost or expense arising out of any:

i. Request, demand or order that an insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

ii. <u>Any **claim** by or on behalf of governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**</u>.

<u>With respect to the General Liability Coverage Part, this exclusion does not apply to</u>:

a. **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**. (Underlining added).

It is settled in New York that to be enforceable, exclusionary language in an insurance policy must be specific and clear. Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304 (1984). Any ambiguity in the language will be drawn most strongly against the insurer. Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390 (1983). Exclusions must not be extended by interpretation or implication but rather strictly and narrowly construed. Seaboard, supra. As the New York Court of Appeals explained in Pioneer Owners Ass'n Towers v. State Farm Fire & Casualty Co., 12 N.Y.3d 302 (2009):

The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds. We said in *Seaboard Sur. Co v Gillette Co.* (64 NY2d 304 [1984]):

Case 2:25-cv-02310-JMA-LGD   Document 1-1   Filed 04/25/25   Page 36 of 76 PageID #:

RCB
L&R

September 26, 2024
Page 4

"[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." (*Id.* at 311 [citations and internal quotation marks omitted]; see also *Cone v Nationwide Mut. Fire Ins. Co.*, 75 NY2d 747, 749 [1989] [exclusions from coverage "construed strictly against the insurer"]; *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 353 [1978] ["ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause"].)

We have enforced policy exclusions only where we found them to "have a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion" (*Breed*, 46 NY2d at 355).

This case is a close one, but we cannot say that the event that caused plaintiff's loss was unambiguously excluded from the coverage of this policy.

\*\*\*

We conclude that both plaintiff's and defendant's readings of the clauses are reasonable. Our precedents require us to adopt the readings that narrow the exclusions, and result in coverage."

A **hostile fire** is defined in the Policy as "a fire which becomes uncontrollable or breaks out from where it was intended to be". Common Conditions, Definitions and Exclusions at Section B(17). At issue here is clearly hostile fires.

Further, under New York law, the Policy's exception for **property damage** "caused by heat, smoke or fumes" from a **hostile fire** means such damages that were "but for" caused by heat, smoke or fumes. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017) ("cause" when used in insurance policy may mean "but for" causation unless the policy employs modifiers such as "in whole or in part" which—because "but for" causation cannot be partial—connotes both "but for" and proximate causation). Here, but-for the heat, smoke or fumes of the **hostile fire** the property damages from the application of the firefighting foam to control and put out the heat, smoke or fumes would not have occurred. Thus, the property damages was "caused" by heat, smoke or fumes.

Additionally, even assuming proximate causation is required, it is readily met. Under New York law, "the concept of proximate cause, or more appropriately legal cause, [is]… an elusive one, incapable of being precisely defined to cover all situations". Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 314 (1980). It may be established as a *prima facie* matter



September 26, 2024
Page 5

where there is evidence that a party or matter "was a substantial cause of the events which produced the injury," although ultimately, "[g]iven the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause." Id. at 315; see also Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685 F.Supp.3d 187, 208 (S.D.N.Y. 2023). An intervening act (such as the use of firefighting foam to put out and control the heat, smoke or fumes of the **hostile fire**) if "normal or foreseeable," does not preclude a finding proximately cause from the precipitating event (Woodling v. Garrett Corp., 813 F.2d 543, 555–56 (2d Cir. 1987)) and does "not automatically sever[]" the "causal connection" (Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011) (quoting Derdiarian, 51 N.Y.2d at 315). See also U.S. Specialty Insurance Company v. Harleysville Worcester Insurance Company, 2021 WL 4043457, *10 (S.D.N.Y. 2021). The use of a firefighting material foreseeably ensues from heat, smoke or fumes of a **hostile fire** such that the causal link exists and is not broken.

### III.   Inapplicability of the owned-property exclusion

Further, contrary to Berkley's contention, the owned-property exclusion to covered **property damage** contained in paragraph D(7) of the General Liability Coverage Part-- providing that **property damage** does not include damage to the Insured's own property--does not justify a denial of coverage here. At issue is environmental contamination migrating toward and threatening adjoining lands and the waters of the Long Island Aquifer which provides the sole source of drinking water to Long Island. New York courts as a matter of law and public policy do not apply an owned-property exclusion in this circumstance. Olin Corporation v. Lamorak Insurance Company, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018) ("numerous district courts in this Circuit have found that the owned property exclusion does not apply where cleanup of the insured's property is required to prevent damage to property of a third party or to protect public health, regardless of whether third party property damage has already occurred"). The refusal on public policy grounds to apply an owned-property exclusion in this context applies "regardless" of whether damage to a third party's property has actually occurred. Id.; Kirchner v. Fireman's Fund Ins. Co., 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); HLT Properties, LLC v. Evanston Insurance Company, 388 F.Supp.3d 718, 733 (W.D. Texas 2019) (applying New York law).

### IV.   The Site Characterization Consent Order did not offer or agree to pay amounts in excess of the retained limit.

Contrary to Berkley's further contention, by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town did not contravene condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**." The 2020 Site Characterization Consent Order obligated the Town to reimburse the DEC for only $38,214, which is less than the retained limits. Further, that Site Characterization Consent Order extensively preserved the Town's rights and did not commit the Town to offering or agreeing to pay any amount in excess of the **retained limit**. The Consent Order specifically

Case 2:25-cv-02310-JMA-LGD    Document 1-1    Filed 04/25/25    Page 38 of 76 PageID #: 41

RCB
L&R

September 26, 2024
Page 6

states:

3. Respondent consents to the issuance of this Order without (i) an admission or finding of liability, fault, wrongdoing, or violation of any law, regulation, permit, order, requirement, or standard of care of any kind whatsoever; (ii) an acknowledgment that there has been a release or threatened release of hazardous waste at or from the Site; and/or (iii) an acknowledgment that a release or threatened release of hazardous waste at or from the Site constitutes a significant threat to the public health or environment.

4. Respondent and the Department agree that the primary goal of this Order is for Respondent to undertake a Site Characterization at the Site.

The Consent Order only greed to investigate so as to characterize the site. Further, having fully preserved the Town's rights as to liability, the Consent Order in its incorporated "APPENDIX A [-] STANDARD CLAUSES FOR ALL NEW YORK STATE SUPERFUND ADMINISTRATIVE ORDERS" specifically provided that the Town could fully challenge DEC determinations and that nothing in the Consent Order altered that (VIII(B)), that even more, the Town had the full authority to elect to "terminate" the Consent Order if it disagreed with any DEC remediation order (XIV), and contained numerous other provisions which preserved the Town's authority not to be bound by DEC directives.

Accordingly, coverage is hereby again demanded. All rights are reserved.

Yours truly,

ROSENBERG CALICA BIRNEY
LIEBMAN & ROSS LLP

By:

Robert M. Calica
Judah Serfaty

cc: Hon. Annette Eaderesto
    Town Attorney, Town of Brookhaven
    (via email: aeaderesto@brookhavenny.gov)

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** SUFFOLK
-------------------------------------------------------------------X
TOWN OF BROOKHAVEN,

                              Plaintiff/Petitioner,

              - against -                          Index No. 605051/2025
BERKLEY INSURANCE COMPANY, a/k/a or d/b/a
BERKLEY PUBLIC ENTITY MANAGERS,

                              Defendant/Respondent.
-------------------------------------------------------------------X

## NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: March 17, 2025`

Robert M. Calica, Esq.
<u>Name</u>
ROSENBERG CALICA BIRNEY LIEBMAN
& ROSS LLP

Firm Name

400 Garden City Plaza, Suite 403
Address

Garden City, New York  11530

516.747.7400
Phone

rcalica@rosenbergllp.com
E-Mail

To: Berkley Insurance Company

412 Kemble Avenue, Ste. 310N

Morristown, New Jersey 07960

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 1

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
TOWN OF BROOKHAVEN,

|  |  |
|---|---|
| Plaintiff, | Index No.: 2025- |
| -against- | **SUMMONS** |
| BERKLEY INSURANCE COMPANY, a/k/a or d/b/a BERKLEY PUBLIC ENTITY MANAGERS, | Plaintiff designates Suffolk County as the place of trial The basis of venue is CPLR 503 |
| Defendant. | |

-------------------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANT(S):**

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the plaintiff's attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Garden City, New York
        February 25, 2025

**ROSENBERG CALICA BIRNEY
LIEBMAN & ROSS LLP**
*Attorneys for Plaintiff, Town of Brookhaven*

By: _____
        Robert M. Calica
100 Garden City Plaza, Suite 408
Garden City, New York 11530
(516) 747-7400

TO:    Berkley Insurance Company
       a/k/a – d/b/a Berkley Public Entity Managers
       412 Kemble Avenue
       Suite 310N
       Morristown, New Jersey  07960

{00502108-2}

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X
TOWN OF BROOKHAVEN,                                             Index No.:

                         Plaintiff,                    **COMPLAINT**

    -against-

BERKLEY INSURANCE COMPANY, a/k/a or
d/b/a BERKLEY PUBLIC ENTITY MANAGERS,

                    Defendant.
-----------------------------------------------------------------X

       Plaintiff, TOWN OF BROOKHAVEN, by its attorneys, **Rosenberg Calica Birney Liebman & Ross LLP,** (as Special Counsel to Brookhaven Town Attorney Annette Eaderesto, Esq.), for its Complaint herein alleges as follows:

### Introduction

    1.     This action is brought by plaintiff, TOWN OF BROOKHAVEN ("Town" or "Brookhaven"), a New York municipal corporation against defendant BERKLEY INSURANCE COMPANY ("Berkley Insurance"), a/k/a or d/b/a BERKLEY PUBLIC ENTITY MANAGERS, which issued five (or more) applicable insurance policies to the Town covering the periods January 1, 2014 through and including January 1, 2019 (the "Berkley Policies") for, inter alia, declaratory relief, specific enforcement of the Berkley Policies, and reimbursement of the covered environmental contamination losses and damages at issue.

    2.     The Town seeks to require Berkley Insurance to defend, indemnify and reimburse the Town of Brookhaven with reference to any and all claims, damages and losses arising from the contamination of Brookhaven Calabro Airport, a Town-owned 600 acre general aviation airport located in Shirley, County of Suffolk, New York ("Calabro Airport") which is currently subject to environmental investigation and remediation.

{00501735-13}

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

3.      Calabro Airport has become contaminated by substances known as "Aqueous Film-Forming Foam" ("AFFF"), a product widely utilized for many decades to control and extinguish aviation and other flammable liquid fires, particularly at airports such as the Town-owned Calabro Airport ("AFFF Products").

4.      AFFF Products contain two toxic chemical ingredients known as "PFOA" and "PFOS" (collectively, "PFAS") which have been ascertained to leach into the soil and groundwater, resulting in contamination known to have significant adverse health effects on persons, and which are exceedingly difficult and costly to remediate.

5.      In 2016, the United States Environmental Protection Agency ("EPA") issued a Health Advisory Level ("HAL") of 70 parts per trillion for combined PFOA and PFOS, in July 2020, the New York State Department of Environmental Conservation ("DEC") established a Maximum Contamination Level ("MCL") for PFOA and PFOS of 10 parts per trillion each ("PPT"), and in January 2021, the DEC incorporated these MCL's in its regulatory Guidance for MCL levels for Remedial Programs.

6.      A DEC investigation of Calabro Airport (and other surrounding properties) conducted in June and July 2019 reported that PFOA and PFOS contamination in the groundwater beneath Calabro Airport exceeded both the stricter DEC MCL's later adopted on July 30, 2020 and even exceeded the more lenient EPA's 2016 Health Advisory Levels.

7.      As a result of the DEC investigation: (a) the DEC designated the Calabro Airport site as a "potential" Inactive Hazardous Waste disposal site pursuant to New York Environmental Conservation Law Article 27 (ECL §27-1301); (b) the DEC demanded that the Town initially undertake an investigation of the PFOA and PFOS contamination levels in the soil and groundwater of Calabro Airport and to undertake various investigation on measures; and (c) the

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

Town entered into with the DEC a limited Order on Consent and Administrative Settlement dated June 18, 2020 (the "Consent Order").

8.    The Consent Order, without admission or acknowledgment of liability on the part of the Town, requires it to undertake an investigation sufficient for the Town to prepare a Site Characterization Work Plan and Site Characterization Report to the DEC, for which the Town has now been required to engage an environmental engineering consultant, PW Grosser Consulting ("PWGC"), whose additional work is now progressing.

9.    The Consent Order otherwise fully reserved the Town's rights as to liability and other obligations and did not commit the Town to offering or agreeing to pay any amount in excess of a limited reimbursement of prior expenses to the DEC of approximately $38,000.

10.    As detailed below, the Berkley Policies require Berkley Insurance, without limitation, to defend and indemnify the Town with reference to and to reimburse all costs and expenses associated with both claims or potential claims against the Town stemming from contamination of Calabro Airport, its soil and groundwater, the costs of remediation imposed or which may be imposed by the DEC or otherwise required, any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products, and warrant the other relief sought below.

11.    As further shown below, no Exclusion or limitation contained in the Berkley Policies in any manner limits, bars or precludes the Town's right to defense, indemnification, remediation costs, and any other loss and liability which may arise as a result of the contamination of Calabro Airport and its surrounding properties.

### Prior Town Use of AFFF at Calabro Airport

12.    A total of five accidents or incidents have been recorded with the National Transportation Safety Bureau that are connected to Calabro Airport and have resulted in fire on

{00501735-13}                            3

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 2

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

the ground on the following dates: May 6, 1984; August 3, 1988; November 18, 1998; August 19, 2012 and February 12, 2016.

13.    Upon information and belief, AFFF Products were utilized in connection with the five accidents or incidents resulting in a fire on the ground enumerated above.

14.    In addition, AFFF foam has previously been stored in the Terminal Building of the Calabro Airport for firefighting use in small amounts, but not since 2006.

15.    By reason of the foregoing, the Town:  (a) has and will continue to sustain environmental harm and property damage to Calabro Airport, its soils and groundwater from AFFF contamination; (b) may incur substantial expenditures in remediating PFOA and PFOS contamination caused by the use and dispersal of AFFF Products; (c) and may become exposed to liability in future actions and lawsuits by owners of other properties and others against the Town for which the Town is and will be entitled to damages, indemnification, reimbursement, declaratory, or other relief from Berkley Insurance.

### Parties

### A.  The Town and Calabro Airport

16.    Plaintiff, Town of Brookhaven ("Town"), is a municipal corporation organized under the laws of the State of New York with its principal place of business located at 1 Independence Hill, Farmingville, New York.

17.    Calabro Airport was constructed during World War II, was thereafter owned by New York State, and was acquired, owned and has been operated by the Town since 1961, conducting approximately 130,000 aircraft operations annually (over 350 per day), with over 200 aircraft based at the airport, three fixed-based operators ("FBOs") and multiple other tenants.

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

## B. Berkley Insurance and the Berkley Policies

18.    Upon information and belief, Berkley Insurance is an insurance company or entity duly licensed to issue policies of insurance in the State of New York and in accordance with the laws of the State of New York and issued the following policies to the Town of Brookhaven:

| Policy Number | Policy Period | General Liability Coverage Part Limits of Insurance |
|---|---|---|
| PEM 0000039-00 | January 1, 2014 to January 1, 2015 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-01 | January 1, 2015 to January 1, 2016 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-02 | January 1, 2016 to January 1, 2017 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-03 | January 1, 2017 to January 1, 2018 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-04 | January 1, 2018 to January 1, 2019 | Each Occurrence $10,000,000/Aggregate $10,000,000 |

19.    The Town gave due and proper notice to Berkley Insurance in accordance with the requirements of the Berkley Policies of the Town's claims and requests for coverage, defense, indemnification and reimbursement of any and all losses and remediation requirements resulting from the contamination of Calabro Airport by AFFF Products including the Town's giving due and proper disclosure that the Town had executed a Consent Order with the DEC requiring, *inter alia*, that the Town reimburse the DEC for the sum of $38,214 in past DEC site investigation costs and requiring the Town to submit a Site Characterization Work Plan and perform other steps to investigate contamination at Calabro Airport.

{00501735-13}                                    5

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

20.      At the present time, it is anticipated that the DEC may (and may even be likely) to declare Calabro Airport as an Inactive Hazardous Waste site in accordance with the New York Environmental Conservation Law (the "Insured Claims"), which Insured Claims Berkley Insurance has wrongfully rejected by its disclaimer letters dated September 22, 2021 (Ex. 1) and December 10, 2024 (Ex. 2).

**The Basis for Berkley Insurance Disclaimer of the Town's Insurance Coverage Claims**

21.      As set forth in its disclaimer letter dated September 22, 2021 (the "Disclaimer Letter"), Berkley Insurance disclaims coverage in purported reliance upon certain insurance policy "exclusions" and "limitations" enumerated in the Disclaimer Letter (Ex. 1).

22.      The Disclaimer Letter is stated to be based upon the following purportedly applicable "exclusions" or "limitations" in the Berkley Policies (all disputed by the Town):

a.      Exclusions of damages for any costs, civil fines, penalties or expenses levied or imposed against an Insured arising from any complaint or enforcement from any Federal, State or local governmental agency;

b.      Exclusions applicable to "actual alleged or threatened discharge, dispersal, seepage, migration or release or escape of pollutants" or requirements to "monitor, clean up, remove, contain, treat, detoxify or neutralize" such pollutants or claims by any governmental authority or others for damages because of "testing for, monitoring, cleaning up" or otherwise remediating pollutants; and

c.      Exclusions for "property damage" to "Property owned, occupied or leased by an Insured" (i.e., a so-called "Owned Property" exclusion).

23.      Pursuant to the letter of the Town's Special Counsel, Rosenberg Calica Birney Liebman & Ross LLP dated September 26, 2024 (Ex. 3 hereto), the Town duly and timely

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 2

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

requested that Berkley Insurance reconsider its September 22, 2021 Disclaimer Letter upon the

following grounds:

- The Town is entitled to coverage under the Policy's General Liability Coverage Part, for **property damage**;

- Contrary to Berkley's contention, the pollutants exclusion (contained in paragraph C(12) of the Policy's Common Conditions, Definitions and Exclusions) does not apply, because the damages were proximately and foreseeably caused from heat, smoke or fumes from a **hostile fire**, which is an express exception in the Policy to the pollutants exclusion. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017); Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685 F.Supp.3d 187, 208 (S.D.N.Y. 2023); Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011);

- Berkley also wrongly relied on the so-called "owned-property" exclusion to covered property damage (contained in paragraph D(7) of the General Liability Coverage Part). That exclusion provides that property owned by the Insured is not covered as property damage. As a matter of settled law and public policy, the owned-property exclusion does not apply because at issue is environmental contamination migrating or potentially migrating toward adjoining lands of third-parties and to the aquifer waters of the Long Island Sole Source Aquifer, neither of which are owned by the Insured. Olin Corporation v. Lamorak Insurance Company, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018); Kirchner v. Fireman's Fund Ins. Co., 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); and

- Berkley's claim that by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town violated condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain our prior written approval before offering or agreeing to pay any amount in excess of the retained limit," is directly refuted by the express text of that Consent Order, which specifically fully preserved the Town's rights to challenge any DEC remedial orders and allowed and allows the Town to elect to "terminate" that Consent Order (the "Objection Letter").

24.    The Town's detailed elaboration of the basis for the Town's demand for the

reconsideration of the Berkley Insurance Disclaimer as set forth in the Objection Letter (Ex. 3) is

fully and completely incorporated herein, including: (a) its full discussion of applicable New York

law and Federal Court authorities applying New York law or applicable to this dispute; (b) the

Berkley Policies' exception from "exclusion" of property damage "caused by heat, smoke or

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

fumes" from "hostile fires;" (c) the inapplicability of the "Owned-Property" exclusion; (d) that the Site Characterization Consent Order did not offer or agree to pay amounts in excess of the retained limits, and (e) for other reasons more fully detailed in the Town's Objection Letter and/or applicable by law or agreement.

25.     Notwithstanding the Town's Objection Letter, Berkley Insurance wrongfully, unlawfully, without legal cause or justification, and in violation of the terms of the Berkley Policies, adhered to its disclaimer by its letter dated December 10, 2024 (Ex. 2 hereto).

26.     By reason thereof, the Town is entitled to the relief detailed below including, without limitation:

        a.     A declaration that its claims against Berkley Insurance for defense, indemnification and recovery of any and all losses incurred in connection with the pollution of Calabro Airport by AFFF Products, its remediation, or any claims by owners or occupants of "Other Properties" or by others is required under the Berkley Policies;

        b.     Specifically enforcing the Berkley Policies by requiring Berkley Insurance, at its sole cost and expense, to defend, indemnify and reimburse the Town from any and all loss or liability arising out of the pollution of Calabro Airport by AFFF Products against any claims against the Town arising therefrom; and

        c.     Granting the Town such other and further relief as may be appropriate.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

27.     Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

28.     An actual and justiciable controversy exists between the Town of Brookhaven and Berkley Insurance concerning whether Berkley Insurance wrongly disclaimed coverage.

29.     Plaintiff has no adequate remedy at law.

{00501735-13}                                8

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

30.    By reason of the foregoing, the Town of Brookhaven is entitled to a Declaratory judgment declaring as follows:

a.    Declaring that Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety, and any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

b.    Declaring that no exclusion, limitation or other provision of the Berkley Policies in any manner limits, bars, or precludes the Town's right to defense, indemnification, reimbursement of remediation costs, and any other loss, liability or other damage which the Town may sustain by reason of the contamination of Calabro Airport, its soil and groundwater and its surrounding properties by AFFF Products;

c.    Declaring that the Town is entitled to the same complete defense, indemnification and reimbursement of remediation and other costs or damages for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by other owners of Other Properties or others in any manner arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

{00501735-13}

9

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

d.    Declaring such other matters, disputes and controversies between the Town of Brookhaven and Berkley Insurance as may be necessary and appropriate to fully resolve any and all disputes and controversies between the parties.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Specific Enforcement)

31.    Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

32.    By reason of the foregoing, the Town is entitled to and hereby demands specific enforcement of the Berkley Policies by requiring that defendant Berkley Insurance do the following:

a.    Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety and, any potential claims against the Town by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

b.    Requiring Berkley Insurance to provide the Town with a full defense, indemnification and reimbursement of remediation and other costs for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by owners of Other Properties or others in any manner

{00501735-13}

10

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 2

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

c.        Requiring Berkley Insurance to perform such further actions as may be necessary and appropriate to fully resolve any and all Town claims and disputes and controversies between the parties.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Monetary Damages)

33.    Plaintiff repeats and realleges each of the foregoing allegations as though set forth herein at length.

34.    By reason of the repudiation and breach of the obligations of defendant Berkley Insurance under the Berkley Policies, the Town of Brookhaven has sustained monetary damages in an amount exceeding all jurisdictional requirements of this Court and increasing steadily as the Town is engaged in the investigation and ongoing partial remediation of contamination of Calabro Airport resulting from the use and dispersal of AFFF Products in an amount to be determined at trial.

**WHEREFORE**, plaintiff, Town of Brookhaven, demands judgment against defendant, Berkley Insurance as follows:

1.    Upon the First Cause of Action Declaring as follows:

a.        Declaring that Berkley Insurance is required under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety, and any potential claims against the Town

{00501735-13}                                    11

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 2

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

by owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

b.      Declaring that no exclusion, limitation or other provision of the Berkley Policies in any manner limits, bars, or precludes the Town's right to defense, indemnification, reimbursement of remediation costs, and any other loss, liability or other damage which the Town may sustain by reason of the contamination of Calabro Airport, its soil and groundwater and its surrounding properties by AFFF Products;

c.      Declaring that the Town is entitled to the same complete defense, indemnification and reimbursement of remediation and other costs or damages for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by other owners of Other Properties or others in any manner arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

d.      Declaring such other matters, disputes and controversies between the Town of Brookhaven and Berkley Insurance as may be necessary and appropriate to fully resolve any and all disputes and controversies between the parties;

2.      Upon the Second Cause of Action, granting the Town specific performance of the Berkley Policies by requiring Berkley Insurance to do the following:

a.      Requiring Berkley Insurance under the Berkley Policies to defend, indemnify and reimburse the Town of Brookhaven with reference to all damages, losses, costs and expenses associated with both claims or potential claims against the Town stemming from the contamination of Calabro Airport, its soil and groundwater by AFFF Products, the costs of remediation imposed or which may be imposed by the DEC or otherwise required by law or public safety and, any potential claims against the Town by

**FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM**
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

owners of adjacent or other nearby properties (the "Other Properties") arising from the contamination of Calabro Airport by AFFF Products;

b.      Requiring Berkley Insurance to provide the Town with a full defense, indemnification and reimbursement of remediation and other costs for which the Town may become exposed to liability in future actions, lawsuits, proceedings or claims by owners of Other Properties or others in any manner arising out of contamination of Calabro Airport, its soils and groundwater from AFFF Products and the cost of remediating such contamination; and

c.      Requiring Berkley Insurance to perform such further actions as may be necessary and appropriate to fully resolve any and all Town entitlements, claims and disputes and controversies between the parties;

3.      Upon the Third Cause of Action, granting the Town of Brookhaven monetary damages against Berkley Insurance for repudiation and breach of the Berkley Policies granting damages in an amount to be determined at trial; and

4.      Granting plaintiff Town of Brookhaven such other and further relief as the Court may deem appropriate, together with interest, as applicable, from the earliest ascertainable date, and the costs and disbursements hereof.

Dated: Garden City, New York
            February 25, 2025

Yours, etc.

**ROSENBERG CALICA BIRNEY
LIEBMAN & ROSS LLP**
*Attorneys for Plaintiff Town of Brookhaven*

By: _____
            Robert M. Calica
            Judah Serfaty
100 Garden City Plaza, Suite 408
Garden City, New York  11530
(516) 747-7400

{00501735-13}                                         13

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

TO:     Berkley Insurance Company
        a/k/a – d/b/a Berkley Public Entity Managers
        412 Kemble Avenue
        Suite 310N
        Morristown, New Jersey  07960

FILED: SUFFOLK COUNTY CLERK 02/26/2025 03:08 PM

NYSCEF DOC. NO. 6

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/26/2025

## VERIFICATION

STATE OF NEW YORK    )
                             ) ss:

COUNTY OF SUFFOLK    )

       ANNETTE EADERESTO, being duly sworn deposes and says:

       I am the Town Attorney of the Town of Brookhaven, and a Public Officer.

       I have read the foregoing Complaint, and the same is true of own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____
ANNETTE EADERESTO

Sworn to before me this
26th day of February, 2025.

_____
Notary Public

MICHELE A DANCONA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DA6042652
Qualified in Suffolk County
Commission Expires May 30, 2026

{00502227-1}

1 of 1

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 3

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025


**Berkley**
Public Entity
*a Berkley Company*

Jeffrey Roberts
Claims Director
412 Mt. Kemble Avenue, Suite G50
Morristown NJ 07960
212-835-1814
Email: jeroberts@wrberkley.com

September 22, 2021

**Via Email Only**
jlutzer@brookhavenny.gov

Jennifer Lutzer
Town of Brookhaven
1 Independence Hill
Farmingville, New York 11738

Re:    ***In The Matter Remedial Program For Brookhaven Calabro Airport***
       Index No.:          CO 1-20200210-82
       Berkley Insured:    Town of Brookhaven
       Berkley Claim No.:  2105409

Dear Ms. Lutzer:

This provides Berkley Insurance Company's ("Berkley") updated coverage position based upon its ongoing investigation. This follows our April 28, 2021 letter that is incorporated by reference herein.

Berkley issued to the Town of Brookhaven ("Brookhaven") the following policies (collectively the "Berkley policies"):

| Policy Number | Policy Period | General Liability Coverage Part Limits of Insurance |
|---|---|---|
| PEM 0000039-00 | January 1, 2014 to January 1, 2015 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-01 | January 1, 2015 to January 1, 2016 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-02 | January 1, 2016 to January 1, 2017 | Each Occurrence $10,000,000/Aggregate $10,000,000 |
| PEM 0000039-03 | January 1, 2017 to January 1, 2018 | Each Occurrence $10,000,000/Aggregate $10,000,000 |

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 3

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

| | | |
|---|---|---|
| PEM 0000039-04 | January 1, 2018 to January 1, 2019 | Each Occurrence $10,000,000/Aggregate $10,000,000 |

For the reasons discussed below, Berkley disclaims coverage to Brookhaven and will not defend or indemnify Brookhaven in the above referenced matter.

## BACKGROUND

The New York Department of Environmental Conservation (the "NYDEC") initiated the matter In The Matter Remedial Program for DEC Site Brookhaven Calabro Airport DEC Site No. 152263, Index No. CO 1-20200210-82, for the property located at 135 Dawn Drive, Shirley, New York 11967 (the "Site"). The NYDEC has designated the Calabro Airport location as a potential hazardous waste site and is conducting a "Site Characterization" to identify and quantify the presence of PFOS and PFOA contaminants found in the soil and groundwater. A November 26, 2019 letter from Environmental Assessment & Remediations ("EAR") indicates that investigation of the Site is being conducted pursuant to NYDEC Standby Contractor Authorization Form dated February 14, 2019 (Callout ID: 136708) and that, between June 24 and July 2, 2019, EAR installed temporary borings at fourteen (14) locations for the collection of groundwater samples. The samples collected contained levels of PFOA and PFOS that were outside of acceptable limits or exceeded USEPA advisory level limits.

We understand that Brookhaven owns the Calabro Airport Site. On May 21, 2020, Brookhaven executed a Consent Order with the NYDEC that obligates Brookhaven to reimburse the NYDEC $38,214 in past Site investigation costs and requires Brookhaven to submit a Site Characterization Work plan.

## THE BERKLEY POLICIES

Berkley refers you to the complete terms, conditions and exclusions of the Berkley policies. Berkley reserves the right to rely on any term(s), condition(s) and exclusion(s) of the Berkley policies and the failure to cite any particular term(s), condition(s) and exclusion(s) herein shall not be deemed a waiver thereof.

Please refer to the "**PUBLIC ENTITY RETAINED LIMITS POLICY COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS**" (form CCP1001 01/13) which provides:

    **A.   CONDITIONS**
        All Coverage Parts included in this **policy** are subject to the following conditions except as where expressly indicated.
                    \*    \*    \*
      9.   Defense and Settlement
          a)   **We** have no duty to defend a claim against an insured seeking damages.
          b)   **We** shall have no obligation to pay or indemnify an **insured** for any amount if an **insured's** obligation to pay **damages** and **claim expenses** is within or equal to the **retained limit**.

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM    INDEX NO. 605051/2025
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 02/25/2025

c) **You** have the duty to defend any **claim** to which this insurance applics and shall be responsible for the **damages** and **claim expenses** up to the **retained limit.**

d) **Your** legal obligation to pay **damages** must be evidenced either by a judgment against an **insured** after final adjudication, an arbitration award entered as a judgment, or by a written settlement executed by **you** and the settling claimants.

e) **You** must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**.

f) **We** shall have the right and **you** shall avail **us** of the opportunity to associate with **you** in the defense of any **claim** that in **our** sole opinion may create indemnification obligations for **us**.

g) **We** shall have the right to settle any **claim** that in **our** sole opinion may create indemnification obligations for **us** under this **policy**.

\*   \*   \*

## B. DEFINITIONS

1. **Accident** includes continuous or repeated exposure to substantially the same general harmful conditions which results in **bodily injury** or **property damages**. All such exposure to substantially the same general conditions will be considered as arising out of one **accident**.

\*   \*   \*

3. **Advertising injury** means one or more of the following offenses committed or alleged to have been committed in any advertisement, publicity article, broadcast, or telecast and arising out of **your** advertising activities except if arising out of electronic chat rooms or bulletin boards:
   a. Libel, slander or defamation;
   b. Any infringement of copyright, title or slogan;
   c. Use of another's advertising idea in **your** advertisement;
   d. Oral or written publication of material that violates a person's right of privacy.

\*   \*   \*

6. **Bodily injury** means:
   a. Physical injury, sickness or disease sustained by any person, including death resulting from any of these at any time; and
   b. Mental anguish, mental injury mental tension, emotional distress, disability, pain and suffering, shock or fright if arising out of item 6.a.

7. **Claim** means:
   a. A written demand against any **insured** for monetary damages or non-monetary injunctive relief;
   b. A civil, administrative or regulatory proceeding against any **insured** commenced by:
      i. The service of a complaint or similar pleading against any **insured** seeking monetary damages or non-monetary or injunctive relief;

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 3

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

     ii.    The issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with any federal, state or local governmental authority located anywhere in the world; or

     iii.   The service upon or other receipt by an **insured** of a written notice or subpoena from the investigating authority identifying any **insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced.

Notwithstanding the foregoing, however, any complaint filed with the Equal Employment Opportunity Commission ("EEOC") shall not constitute a **claim** unless the EEOC has issued a "right to sue" letter or notice to the claimant:

c.   A criminal proceeding against any **insured** commenced by a return of an indictment, information, or similar document, or receipt or filing of a notice of charges;

d.   An arbitration proceeding against any **insured** seeking monetary damages or non-monetary or injunctive relief;

e.   Solely with respect to Insuring Agreement A.2, a written request of the **insured** to toll or waive a statute of limitations applicable to a **claim** described in paragraphs a through d above; including any appeal therefrom.

**Claim** does not mean or include a labor union grievance or complaint filed with a labor union.

\*   \*   \*

11. **Damages** means:

a.   Compensatory **damages** that the **insured** becomes legally obligated to pay on account of any **claim**;…

\*   \*   \*

d.   **Damages** does not include:

     i.    Any amount that the **insured** is not financially liable or legally obligated to pay;

     ii.   Taxes, fines, penalties, or assessments;

     iii.   Punitive or exemplary **damages**, or the multiple portion of any multiplied **damage** award;

     iv.   Matters uninsurable under the laws pursuant to which this **policy** is construed;

     v.    The cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief.

     vi.   Employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation in a settlement or judgment for an **employment practice violation**;

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 3

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

     vii.   Any liability or costs incurred to modify any building or property to make it more accessible or accommodating to any person;

    viii.  Any liability of costs in connection with any educational, sensitivity or other corporate program, **policy** or seminar;

    ix.   The value of tuition or scholarship;

    x.    The reimbursement of tuition, books, transportation expenses and other fees associated with educational activities;

    xi.   Any amount that an **insured** shall be required to pay pursuant to a **special needs hearing** award, other than prevailing party fees

    xii.  The return of funds which were received:

        i.  from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; or

        ii.  as donations from a third party.

    xiii.  **Crisis management expense**; or

    xiv.  Liquidated **damages**, except to the extent specifically included as **damages** above.

*    *    *

17.   **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

*    *    *

26.   **Occurrence** means:

    a.  With respect to **bodily injury** and **property damage**, an **accident** including continuous or repeated exposure to substantially the same general harmful conditions which results in **bodily injury** or **property damage**. All such exposure to substantially the same general conditions will be considered as arising out of one **occurrence**;

    b.  With respect to **personal injury**, only those offenses specified in the **personal injury** definition. All **damages** arising out of substantially the same **personal injury** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **occurrence**.

    c.  With respect to **advertising injury**, only the offenses listed in the **advertising injury** definition. All **damages** arising out of substantially the same **advertising injury** regardless of frequency, repetition, the number or kind of media used, the number or kind of offenses, or the number of claimants, will be considered as arising out of one **occurrence**.

27.   **Personal injury** means one or more of the following offenses:

    a.  False arrest, false imprisonment wrongful detention or malicious prosecution;

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 3

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

    b.    Libel, slander, defamation of character, or oral or written publication of material that violates a person's right of privacy; unless arising out of advertising activities in electronic chat rooms or bulletin boards;

    c.    Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of the owner, landlord or lessor, or by a person claiming to be acting on behalf of the owner, landlord or lessor.

    d.    **Personal injury** does not include the disclosure of any individual's name; address; telephone number; medical, healthcare or other health information; social security, driver's license or other government identification number; credit or debit card number; account numbers or histories; passwords or other personal information not lawfully available to the general public.

\*   \*   \*

31.    **Pollutant(s)** means

    a.    any substance exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent;

    b.    any solid, liquid, gaseous or thermal irritant, contaminant or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed; and also

    c.    any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, **fungi** or bacteria (not including to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption), lead or lead compounds or lead contained in any materials, and electric or magnetic or electromagnetic field radiation.

\*   \*   \*

31.    **Property damage** means physical injury to tangible property, including all resulting loss of use of such property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. For purposes of this insurance, electronic data is not tangible property. Electronic data means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks. CD-ROMS, DADs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

32.    **Retained limit** means the applicable dollar amounts shown in the Declarations, applicable Coverage Part or endorsement, which the **insured** bears as an uninsured amount at its own risk. The **retained limit** must be satisfied by actual payment by **you**. The **retained limit** cannot be satisfied by payment of any deductible of any other **policy** or any payments made on behalf of any **insured** by any other **insurer**, person or entity. **You** must pay

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 3

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

the **retained limit** under this **policy** without regard to whether any **insured** must pay other amounts under any other **policy**, even if the **claim** is deemed to have been caused by one **occurrence, accident** or **wrongful act.** The **retained limit** shall not be impaired by payments for any **claim**, or related **claim expenses**, brought against an **insured** which is not covered under the applicable Coverage Part.

\* \* \*

37. **Suit** means a civil proceeding in which **damages** because of **bodily injury, property damage, personal injury, advertising injury** or **wrongful act** to which the applicable Coverage Part applies, are alleged, including:
   a. An arbitration proceeding in which such **damages** are alleged; or
   b. Any other Alternative Dispute Resolution proceeding in which such **damages** are alleged.

**C.  Exclusions**

All Coverage Parts included in this **policy** also contain their own exclusions and are subject to any applicable exclusions in the Coverage Part and the following Exclusions that apply to all Coverage Parts except as otherwise expressly indicated:

The insurance under this Coverage Part does not apply to:

\* \* \*

5. Any **damages** for any costs, civil fines, penalties or expenses levied or imposed against an **insured** arising from any complaint or enforcement action from any federal, state, or local government regulatory agency.

\* \* \*

12. Any:
   a. Liability arising from the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or
   b. Loss, cost or expense arising out of any:
      i. Request, demand or order than an **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or
      ii. Any **claim** by or on behalf of a governmental authority or others for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

With respect to the General Liability Coverage Part, this exclusion does not apply to:
   a. **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire;**
   b. **Bodily injury** if sustained within a building owned or occupied by, or rented or loaned to, any **insured** and caused by smoke, fumes, vapor, or soot from equipment used to heat that building.

With respect to the **Automobile** Liability Coverage Part, this exclusion does not apply to **accidents** that occur away from premises owned or

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 3

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

rented to an **insured** with respect to **pollutants** not in or upon a **covered automobile**, but only if:

    a.  The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or **damaged** as a result of the maintenance or use of a **covered automobile**; and

    b.  The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or **damage**; and

    c.  The **pollutants** were not in, upon or released from the **covered automobile**.

Paragraph c. above does not apply to fuels, lubricants, fluids, exhaust, gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **covered automobile** or its parts, if:

    i.  The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **automobile** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

    ii.  The **bodily injury** or **property damage** does not arise out of the operation of **mobile equipment**.

         \*   \*   \*

Please refer to the "**PUBLIC ENTITY RETAINED LIMITS POLICY GENERAL LIABILITY COVERAGE PART**" (form CCP1002 01/13) which provides:

In consideration of the payment of the premium and the undertaking of the **insured** to pay the **retained limit** as described herein, and subject to the Limits of Insurance of this insurance as set forth in the Declarations, and the exclusions, conditions, and other terms of this **policy**, the Company agrees with the **insured** as follows:

A.    Insuring Agreement

The **insurer** will indemnify the **insured** for those sums the **insured** becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**. The **occurrence** must take place in the Coverage Territory.

No other obligation to pay any additional sums, perform acts or provide services is covered.

B.    Retained Limit

The **insurer's** liability under this **policy** applies only to **damages** and **claim expenses** which are in excess of the **retained limit** applicable to this Coverage Part and specified in the Declarations. The **retained limit** must be borne by the **insured** as an uninsured amount and at its own risk. This will be true regardless of:

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 3

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

1.  The number of persons and organizations who are **insureds** under this **policy**;

2.  The number of **claims** made against any or all **insureds**; or

3.  The number of persons or organizations making **claims**.

\* \* \*

D.    Exclusions

The following exclusions apply to this Coverage Part in addition to the exclusions in the Common Conditions, Definitions and Exclusions section of this **policy**.

The insurance under this Coverage Part does NOT apply to:

\* \* \*

7.   Any **property damage** to:
   a.   Property owned, occupied or leased by an **insured** or purchased by an **insured** under an installment sales contract or property on consignment to an **insured**;

**COVERAGE POSITION**

As per the policy's General Liability Coverage Part, Berkley will indemnify Brookhaven for those sums it becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **bodily injury**, **personal injury**, **advertising injury**, or **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**.

The **claim** by the NYDEC does not seek **damages** for **bodily injury**, **personal injury** or **advertising injury** as those terms are defined in the Berkley policies.

To the extent the **claim** seeks damages for **property damage** to property owned, occupied or leased by an **insured** or purchased by an **insured** under an installment sales contract or property on consignment to an **insured**, coverage is excluded pursuant to exclusion "7" in the General Liability Coverage Part.

Berkley also denies coverage to the extent that the NYDEC requires Brookhaven to pay any taxes, fines, penalties, or assessments, as such items are not covered **damages** as that term is defined in the Berkley policies. In addition, Berkley also denies coverage for any costs incurred by Brookhaven to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief, as such items are also not covered **damages.**

The **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS** in the Berkley policies contains a pollution exclusion applicable to all coverage parts which provides that the policies do not apply to any:

   a.   Liability arising from the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or
   b.   Loss, cost or expense arising out of any:

*a Berkley Company*

    i.   Request, demand or order than an **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

    ii.  Any **claim** by or on behalf of a governmental authority or others for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

The NYDEC has identified, and is continuing to investigate, PFOA and PFOS contamination at the Site. The NYDEC Site Record lists PFOA and PFOS as the "Contaminants of Concern" and indicates that they have been detected "above the EPA Health Advisory Level of 70 ng/l." PFOA and PFOS are **pollutants** as that term is defined in the Berkley policies.

NYDEC's claim is that Brookhaven is liable for the discharge, dispersal, seepage, migration, release or escape of the pollutants PFOA and PFOS at the Site. Coverage for the **claim** is excluded section "a." of the pollution exclusion in the Berkley policies.

Brookhaven's Consent Order with the NYDEC obligates Brookhaven to reimburse the NYDEC $38,214 in past Site investigation costs and requires Brookhaven to submit a Site Characterization Work plan to the NYDEC for PFOA and PFOS. Under section "b." of the pollution exclusion, the Berkley policies do not apply to costs incurred to investigate and remediate pollutants PFOA and PFOS at the Site.

Accordingly, coverage for NYDEC's **claim** against Brookhaven is completely excluded from coverage by the pollution exclusion in the Berkley policies. Berkley denies coverage to Brookhaven for NYDEC's **claim**.

Pursuant to exclusion "5" in the **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS** in the Berkley policies, Berkley also denies coverage for any **damages** for any costs, civil fines, penalties or expenses levied or imposed against Brookhaven arising from any complaint or enforcement action from any federal, state, or local government regulatory agency, including but not limited to NYDEC.

Pursuant to condition "9 e)" in the **COMMON CONDITIONS, DEFINITIONS AND EXCLUSIONS**, Brookhaven "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**." Brookhaven executed the Consent Order with the NYDEC prior to notifying Berkley of this claim. Accordingly, Brookhaven's obligations under the Consent Order in excess of the retained limit are excluded from coverage. In addition, **retained limit** shall not be impaired by payments for any **claim**, or related **claim expenses**, brought against an **insured** which is not covered under the applicable Coverage Part. As the **claim** by NYDEC is not covered under the Berkley policies, any payments made by Brookhaven do not erode the **retained limit**. Pursuant to condition "9 a)" Berkley has no duty to defend a claim against an insured seeking damages.

No other coverage parts of the Berkley policies apply to this matter.

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM          INDEX NO. 605051/2025
NYSCEF DOC. NO. 3                                      RECEIVED NYSCEF: 02/25/2025

For the reasons discussed above, Berkley completely denies coverage to Brookhaven. Berkley will not defend or indemnify Brookhaven or any other party to this claim. If you have other insurance policies that may respond to this claim, you should notify that carrier immediately.

Berkley's coverage position is based upon the information available to us. This letter is not and should not be construed as a waiver of any terms, conditions, exclusions or any other provisions of the Berkley policies. Berkley expressly reserves its right to supplement the foregoing if additional information is developed or disclosed and to assert policy positions and defenses not discussed herein which may be determined to be applicable. No waiver of the right to assert additional positions or defenses is intended and such a waiver is denied.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: 25 Beaver Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Boulevard, Mineola, NY 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202.

Please do not hesitate to call me if you have any questions regarding this letter or if you have any additional information you wish Berkley to consider.

Sincerely,

*Jeffrey Roberts*

Jeffrey Roberts
Claims Director

Cc:
Brian Jankauskas, P.E.
New York Department of Environmental Conservation
Division of Environmental Remediation
625 Broadway, 12th Floor
Albany, New York 12233-7013

Felix Wienclaw (via email to fwienclaw@brookhavenny.gov)

Stephen J. Jones (via email to Stephen.JonesJr@willistowerswatson.com)
Willis Towers Watson (via email to IN_WNA_Claims@willistowerswatson.com)

*a Berkley Company*

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 4

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

 **Berkley**
Public Entity Managers
*A Berkley Company*

412 Mt. Kemble Ave.
Suite 310N
Morristown, NJ 07960

December 10, 2024

*Via Email: Rcalica@rosenbergllp.com*

Robert M. Calica, Esq.
Partner
Rosenberg Calica Birney Liebman & Ross LLP
100 Garden City Plaza, Suite 408
Garden City, NY 11530

| | |
|---|---|
| **Re:** | ***In the Matter Remedial Program for Brookhaven Calabro Airport*** |
| **Index No.:** | **CO 1-20200210-82** |
| **Berkley Insured:** | **Town of Brookhaven** |
| **Claim No.:** | **000013971340** |
| **BPE Claim No.:** | **2105409** |

Dear Mr. Calica:

I write on behalf of Berkley Insurance Company ("Berkley") in response to your letter of September 26, 2024, which you submitted on behalf of the Town of Brookhaven ("Brookhaven").

As you know, on September 22, 2021, Berkley disclaimed coverage for Brookhaven's claim in connection with the matter *In The Matter Remedial Program for DEC Site Brookhaven Calabro Airport DEC Site No. 152263*, Index No. CO 1-20200210-82 initiated by the New York Department of Environmental Conservation ("NYDEC.").

In your letter, you asserted Berkley's bases for denying coverage were contrary to the subject policies and governing law and you demanded coverage on behalf of Brookhaven. Berkley has reviewed the arguments and issues that you raised and has determined that Berkley's coverage position remains unchanged. Based on the terms and conditions of the Berkley policies and New York law, Berkley must reiterate its position to disclaim coverage for Brookhaven's claim.

This letter is written under a reservation of rights, with none waived.

Sincerely,

*Matt Passanisi*

Matt Passanisi, Esq.
Claims Director
Berkley Public Entity

**FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM**
NYSCEF DOC. NO. 5

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

## RCB L&R — ROSENBERG CALICA BIRNEY LIEBMAN & ROSS LLP

100 Garden City Plaza, Suite 408, Garden City, New York 11530    TELEPHONE 516-747-7400

**Robert M. Calica**
Partner
EMAIL ADDRESS:  Rcalica@RosenbergLLP.com

DIRECT DIAL: (516) 747-7400 (Ext. 310)
Fax:          (516) 747-7480

September 26, 2024

**VIA FEDERAL EXPRESS AND EMAIL**
Jeffrey Roberts
Claims Director
Berkley Insurance Company
412 Mt. Kemble Avenue, Suite G50
Morristown NJ 07960
212-835-1814
Email: jeroberts@wrberkley.com

> Re: In The Matter Remedial Program For Brookhaven Calabro Airport
> Index No.: CO 1-20200210-82
> Berkley Insured: Town of Brookhaven
> Berkley Claim No.: 2105409

Dear Mr. Roberts:

We are attorneys for the Insured, Town of Brookhaven. For the reasons stated below, the Town disputes Berkley Insurance Company's denial of coverage in this matter as indicated in your correspondence of September 22, 2021. Each of Berkley's asserted bases for denying coverage are contrary to the subject Policy and governing law.

As used in this letter, Town or Insured means the Town of Brookhaven, Berkley or Insurer means Berkley Insurance Company, and boldface terms are as defined in the Policy.

As shown below:

- The Town is entitled to coverage under the Policy's General Liability Coverage Part, for **property damage**;

- Contrary to Berkley's contention, the **pollutants** exclusion (contained in paragraph C(12) of the Policy's Common Conditions, Definitions and Exclusions) does not apply, because the damages were proximately and foreseeably caused from heat, smoke or fumes from a **hostile fire**, which is an express exception in the Policy to the **pollutants** exclusion. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017); Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 5

**RCB L&R**

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

September 26, 2024
Page 2

F.Supp.3d 187, 208 (S.D.N.Y. 2023); Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011);

- Berkley also wrongly relied on the so-called "owned-property" exclusion to covered **property damage** (contained in paragraph D(7) of the General Liability Coverage Part). That exclusion provides that property owned by the Insured is not covered as **property damage**. As a matter of settled law and public policy, the owned-property exclusion does not apply because at issue is environmental contamination migrating or potentially migrating toward adjoining lands of third-parties and to the aquifer waters of the Long Island Sole Source Aquifer, neither of which are owned by the Insured. Olin Corporation v. Lamorak Insurance Company, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018); Kirchner v. Fireman's Fund Ins. Co., 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); and

- Berkley's claim that by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town violated condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**," is directly refuted by the express text of that Consent Order, which specifically fully preserved the Town's rights to challenge any DEC remedial orders and allowed and allows the Town to elect to "terminate" that Consent Order.

## I.    <u>Coverage</u>

Under the Policy's General Liability Coverage Part, in pertinent part, Berkley is obligated to indemnify the Town for those sums it becomes legally obligated to pay as **damages** and/or **claim expenses** in excess of the **retained limit** because of **property damage** taking place during the **policy period** and caused by an **occurrence** during the **policy period**.

Investigations have uncovered that the **property damage** to Calabro Airport was in large part the result of multiple fires from airplane crashes, resulting in heat, smoke and fumes that were foreseeably treated with Aqueous Film-Forming Foam (AFFF), also known as firefighting foam. Five accidents or incidents have been recorded with the National Transportation Safety Bureau that are connected to the airport and have resulted in heat, smoke or fumes from a **hostile fire** on the ground on the following dates: May 6, 1984; August 3, 1988; November 18, 1998; August 19, 2012 and February 12, 2016. Upon information and belief, AFFF products were utilized in connection with those five accidents or incidents and which leached into the ground and travelled.

The **damages** and date of **occurrence** are within the coverage periods. New York courts apply the broad "injury-in-fact" trigger for an **occurrence** under insurance policies. Carrier Corporation v. Allstate Insurance Company, 187 A.D.3d 1616 (4th Dep't 2020); Continental Cas. Co. v. Rapid-American Corp., 177 A.D.2d 61 (1st Dep't 1992), order aff'd, 80 N.Y.2d 640 (1993). As it pertains to environmental injury to property, this broad standard is not at all limited to first exposure of the lands to the contaminants. Instead, policy **occurrence** triggering dates extend throughout the periods that the contamination injures the land and/or underlying waters.

**FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM**
NYSCEF DOC. NO. 15

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

**RCB**
**L&R**

September 26, 2024
Page 3

Cortland Pump & Equip., Inc. v. Firemen's Ins. Co. of Newark, N.J., 194 A.D.2d 117, 121 (3d Dept. 1993).

**II.    The Policy's "hostile fire" exception to the pollutants exclusion**

The **pollutants** exclusion contained in paragraph C(12) the Policy's Common Conditions, Definitions and Exclusions, while providing an express exclusion for governmentally directed cleanups of environmental contaminants, contains a specific exception to that exemption concerning **property damage** caused from heat, smoke or fumes from a **hostile fire**. It therefore does not exempt coverage for such governmentally directed cleanups falling within that **hostile fire** exception. It provides:

[Exclusions:] 12. Any:

a. Liability arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

b. Loss, cost or expense arising out of any:

> i. Request, demand or order that an insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

> ii. Any **claim** by or on behalf of governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

With respect to the General Liability Coverage Part, this exclusion does not apply to:

a. **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**. (Underlining added).

It is settled in New York that to be enforceable, exclusionary language in an insurance policy must be specific and clear. Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304 (1984). Any ambiguity in the language will be drawn most strongly against the insurer. Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390 (1983). Exclusions must not be extended by interpretation or implication but rather strictly and narrowly construed. Seaboard, supra. As the New York Court of Appeals explained in Pioneer Owners Ass'n Towers v. State Farm Fire & Casualty Co., 12 N.Y.3d 302 (2009):

> The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds. We said in *Seaboard Sur. Co. v Gillette Co.* (64 NY2d 304 [1984]):

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM
NYSCEF DOC. NO. 2

INDEX NO. 605051/2025
RECEIVED NYSCEF: 02/25/2025

September 26, 2024
Page 4

"[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." (*Id.* at 311 [citations and internal quotation marks omitted]; see also *Cone v Nationwide Mut. Fire Ins. Co.*, 75 NY2d 747, 749 [1989] [exclusions from coverage "construed strictly against the insurer"]; *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 353 [1978] ["ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause"].)

We have enforced policy exclusions only where we found them to "have a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion" (*Breed*, 46 NY2d at 355).

This case is a close one, but we cannot say that the event that caused plaintiff's loss was unambiguously excluded from the coverage of this policy.

\*\*\*

We conclude that both plaintiff's and defendant's readings of the clauses are reasonable. Our precedents require us to adopt the readings that narrow the exclusions, and result in coverage."

A **hostile fire** is defined in the Policy as "a fire which becomes uncontrollable or breaks out from where it was intended to be". Common Conditions, Definitions and Exclusions at Section B(17). At issue here is clearly hostile fires.

Further, under New York law, the Policy's exception for **property damage** "caused by heat, smoke or fumes" from a **hostile fire** means such damages that were "but for" caused by heat, smoke or fumes. Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 322 (2017) ("cause" when used in insurance policy may mean "but for" causation unless the policy employs modifiers such as "in whole or in part" which—because "but for" causation cannot be partial—connotes both "but for" and proximate causation). Here, but-for the heat, smoke or fumes of the **hostile fire** the property damages from the application of the firefighting foam to control and put out the heat, smoke or fumes would not have occurred. Thus, the property damages was "caused" by heat, smoke or fumes.

Additionally, even assuming proximate causation is required, it is readily met. Under New York law, "the concept of proximate cause, or more appropriately legal cause, [is]... an elusive one, incapable of being precisely defined to cover all situations". Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 314 (1980). It may be established as a *prima facie* matter

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 13

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

RCB
L&R

where there is evidence that a party or matter "was a substantial cause of the events which produced the injury," although ultimately, "[g]iven the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause." Id. at 315; see also Travelers Property Casualty Company v Harleysville Worcester Insurance Company, 685 F.Supp.3d 187, 208 (S.D.N.Y. 2023). An intervening act (such as the use of firefighting foam to put out and control the heat, smoke or fumes of the **hostile fire**) if "normal or foreseeable," does not preclude a finding proximately cause from the precipitating event (Woodling v. Garrett Corp., 813 F.2d 543, 555–56 (2d Cir. 1987)) and does "not automatically sever[]" the "causal connection" (Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp.3d 260, 272 (S.D.N.Y. 2011) (quoting Derdiarian, 51 N.Y.2d at 315). See also U.S. Specialty Insurance Company v. Harleysville Worcester Insurance Company, 2021 WL 4043457, *10 (S.D.N.Y. 2021). The use of a firefighting material foreseeably ensues from heat, smoke or fumes of a **hostile fire** such that the causal link exists and is not broken.

### III.    Inapplicability of the owned-property exclusion

Further, contrary to Berkley's contention, the owned-property exclusion to covered **property damage** contained in paragraph D(7) of the General Liability Coverage Part-- providing that **property damage** does not include damage to the Insured's own property--does not justify a denial of coverage here. At issue is environmental contamination migrating toward and threatening adjoining lands and the waters of the Long Island Aquifer which provides the sole source of drinking water to Long Island. New York courts as a matter of law and public policy do not apply an owned-property exclusion in this circumstance. Olin Corporation v. Lamorak Insurance Company, 332 F.Supp.3d 818, 843-844 (S.D.N.Y. 2018) ("numerous district courts in this Circuit have found that the owned property exclusion does not apply where cleanup of the insured's property is required to prevent damage to property of a third party or to protect public health, regardless of whether third party property damage has already occurred"). The refusal on public policy grounds to apply an owned-property exclusion in this context applies "regardless" of whether damage to a third party's property has actually occurred. Id.; Kirchner v. Fireman's Fund Ins. Co., 1991 WL 177251, at *8 (S.D.N.Y. Sept. 4, 1991); HLT Properties, LLC v. Evanston Insurance Company, 388 F.Supp.3d 718, 733 (W.D. Texas 2019) (applying New York law).

### IV.    The Site Characterization Consent Order did not offer or agree to pay amounts in excess of the retained limit.

Contrary to Berkley's further contention, by entering into the June 18, 2020 Site Characterization Consent Order with the DEC the Town did not contravene condition 9(e) of the Policy's Common Conditions, Definitions and Exclusions, that the Insured "must obtain **our** prior written approval before offering or agreeing to pay any amount in excess of the **retained limit**." The 2020 Site Characterization Consent Order obligated the Town to reimburse the DEC for only $38,214, which is less than the retained limits. Further, that Site Characterization Consent Order extensively preserved the Town's rights and did not commit the Town to offering or agreeing to pay any amount in excess of the **retained limit**. The Consent Order specifically

FILED: SUFFOLK COUNTY CLERK 02/25/2025 04:00 PM

NYSCEF DOC. NO. 12

INDEX NO. 605051/2025

RECEIVED NYSCEF: 02/25/2025

**RCB**
**L&R**

September 26, 2024
Page 6

states:

> 3. Respondent consents to the issuance of this Order without (i) an admission or finding of liability, fault, wrongdoing, or violation of any law, regulation, permit, order, requirement, or standard of care of any kind whatsoever; (ii) an acknowledgment that there has been a release or threatened release of hazardous waste at or from the Site; and/or (iii) an acknowledgment that a release or threatened release of hazardous waste at or from the Site constitutes a significant threat to the public health or environment.

> 4. Respondent and the Department agree that the primary goal of this Order is for Respondent to undertake a Site Characterization at the Site.

The Consent Order only greed to investigate so as to characterize the site. Further, having fully preserved the Town's rights as to liability, the Consent Order in its incorporated "APPENDIX A [-] STANDARD CLAUSES FOR ALL NEW YORK STATE SUPERFUND ADMINISTRATIVE ORDERS" specifically provided that the Town could fully challenge DEC determinations and that nothing in the Consent Order altered that (VIII(B)), that even more, the Town had the full authority to elect to "terminate" the Consent Order if it disagreed with any DEC remediation order (XIV), and contained numerous other provisions which preserved the Town's authority not to be bound by DEC directives.

Accordingly, coverage is hereby again demanded. All rights are reserved.

Yours truly,

ROSENBERG CALICA BIRNEY
LIEBMAN & ROSS LLP

By: _____
Robert M. Calica
Judah Serfaty

cc: Hon. Annette Eaderesto
Town Attorney, Town of Brookhaven
(via email: aeaderesto@brookhavenny.gov)

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** SUFFOLK
-----------------------------------------------------------------x
TOWN OF BROOKHAVEN,

                      Plaintiff/Petitioner,

           - against -                        Index No. 605051/2025
BERKLEY INSURANCE COMPANY, a/k/a or d/b/a
BERKLEY PUBLIC ENTITY MANAGERS,

                    Defendant/Respondent.
-----------------------------------------------------------------x

## NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because:**

    1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

      - serving and filing your documents electronically

      - free access to view and print your e-filed documents

      - limiting your number of trips to the courthouse

      - paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: March 17, 2025`

Robert M. Calica, Esq.

Name

ROSENBERG CALICA BIRNEY LIEBMAN
& ROSS LLP

Firm Name

400 Garden City Plaza, Suite 403

Address

Garden City, New York  11530

516.747.7400

Phone

rcalica@rosenbergllp.com

E-Mail

To:    Berkley Insurance Company

412 Kemble Avenue, Ste. 310N

Morristown, New Jersey 07960